**Elsie García**                                                      EXHIBIT A

| | |
|---|---|
| **From:** | Alexandra Casellas-Cabrera |
| **Sent:** | Tuesday, April 1, 2025 6:55 PM |
| **To:** | Jane Becker Whitaker |
| **Cc:** | Elsie García; Luis R.Pérez Giusti |
| **Subject:** | WE, LLC v. CRV_First Set of Interrogatories and Request for Production of Documents to Plaintiff (8500-034) |
| **Attachments:** | FIRST SET OF INTERROGATORIES AND REQUEST FOR PRODUCTION OF DOCUMENTS TO PLAINTIFF 4901-9506-4617 v.3.pdf |

Dear counsel,

     Attached please find Defendants' *First Set of Interrogatories and Request for Production of Documents to Plaintiff*. Pursuant to the Joint ISC responses are due May 1st.

     Please let us know if you have any questions or require any clarifications.

Best,
Alexandra
Alexandra Casellas-Cabrera
Special Counsel



208 Ponce de León Ave.
Suite 1600
San Juan, P.R. 00918



acasellas@amgprlaw.com
adsuarlaw.com
787.281.1816

## UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

| | |
|---|---|
| WE, LLC d/b/a WILD ENCANTOS., <br><br> Plaintiff, <br><br> v. <br><br> CARIBBEAN RETAIL VENTURES, INC., SALVADOR ABADI, Jane Doe, and their conjugal partnership; JOEL BENDER, Susan Roe, and their conjugal partnership <br><br> Defendants. | Civil No. 3:24-cv-01185 (CVR) <br><br><br> Re: Copyright Infringement |

## FIRST SET OF INTERROGATORIES AND
## REQUEST FOR PRODUCTION OF DOCUMENTS TO PLAINTIFF

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Caribbean Retail Ventures, Inc. ("CRV"); Salvador Abadi, his spouse, and their conjugal partnership; and Joel Bender, his spouse, and their conjugal partnership (collectively, with CRV the "Defendants"), by and through its undersigned counsel, hereby requests Plaintiff, WE, LLC d/b/a Wild Encantos ("WE") to answer each of the following interrogatories, separately and fully, in writing and under oath, by May 1st, 2025 as agreed by both parties (**ECF No. 55**). In responding to these interrogatories, WE is requested to furnish all information available to it, its attorneys, its investigators or anyone else acting on its behalf.

In addition, pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, WE is also required to produce for inspection and photocopying the documents requested below.  WE is further required to respond individually and in writing to each request for production of documents and to identify and produce documents which are responsive to each request.  These responses and

documents shall be produced by May 1st, 2025 as agreed in writing by both parties (**ECF No. 55**), at the law offices of Adsuar, 208 Ponce de León Avenue, Suite 1600, Hato Rey, Puerto Rico 00918.

## I.    GENERAL INSTRUCTIONS

The law requires that your answers to these interrogatories disclose all information that is known or available to you, including not only your own present and personal knowledge, but also information in the possession of your agents, employees, officers, attorneys, accountants, auditors, engineers, experts or other representatives, or any other person acting on your behalf.  If any of these interrogatories cannot be answered fully, please answer to the extent possible and provide whatever information, knowledge or belief you do have concerning the unanswered portion.  If you object to an interrogatory or a portion of an interrogatory, answer that portion of the interrogatory to which you do not object, and specify the precise ground or basis for your objection and the precise portion of the interrogatory to which an objection is made.

Each interrogatory is a continuing one. If after serving an answer to an interrogatory, you obtain or become aware of any further knowledge pertaining to the subject matter of such interrogatory, amended answers setting forth such information must be provided.

If you claim any form of privilege or immunity, whether based on statute or otherwise, as a ground for not responding in whole or in part to any interrogatory, you shall set forth in complete detail each and every fact or ground upon which the privilege is based, including sufficient facts for the Court to make a full determination whether the claim or privilege is valid.  If you claim any form of **privilege** as the ground for not producing a document or answering an interrogatory, please state the following for each such response: (a) the name of each author of the communication concerned; (b) the name of each person to whom the communication was addressed; (c) the name of each person to whom the document indicates was to be copied; (d) the date of the

communication; (e) a brief description of the nature and subject matter of the communication or the portion withheld; (f) name of each person to whom the communication was shown or with whom it was discussed; and (g) the nature of the claim of privilege or immunity.

## II.    DEFINITIONS

1.    Each interrogatory and request for production of documents seeks information available to WE, its affiliated entities, attorneys or agents, and all persons acting on its behalf. Accordingly, the terms "plaintiff", "you", and "your" refer without limitation to WE, its affiliated entities, its attorneys and agents, and all persons acting on its behalf.

2.    The terms used herein are to be given their most expansive and inclusive interpretation unless otherwise specifically limited in the request itself. This includes, without limitation the following:

a.    construing "and" and "or" in the disjunctive or conjunctive as necessary to make the request more inclusive; and

b.    construing the singular form of a word to include the plural and the plural to include the singular;

3.    The term "Amended Complaint" refers to the "Amended Complaint" filed by plaintiff, WE, at ECF No. 42 of the captioned case.

4.    The term "Answer to the Amended Complaint" refers to the document entitled "Answer to Amended Complaint" filed by Defendants at ECF No. 53.

5.    "WE" or "Plaintiff" shall mean and refer to plaintiff WE, LLC.

6.    "Plush Toy Coqui" refers to the word stuffed toy animal identified by Plaintiff in ¶7 of the Amended Complaint.

7.     "Plush Toy Parrot" refers to the word stuffed toy animal identified by Plaintiff in ¶7 of the Amended Complaint.

8.     "Plush Toys" refers to the stuffed toy products at issue in this case, including but not limited to the "Plush Toy Coqui" and "Plush Toy Parrot" identified by Plaintiff in ¶7 of the Amended Complaint.

9.     "*Defendants' Plush Toy Design*" refers to "Defendants' Toy Parrot Design" and the "Defendants' Toy Coqui Design," which refer to the plush toy parrot and plush toy coqui, respectively, that were previously sold at CRV's Always 99 Stores.

10.    The term "document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Fed. R. Civ. P. 34 (a). It shall include any tangible thing upon which any expression, communication, or representation has been recorded, as well as all "writings," "recordings," and "photographs," as defined by Fed. R. Evid. 1001; information stored electronically or electromagnetically (such as electronic mail or any other electronic files) and all drafts or non-final versions, alterations, modifications, and amendments to any of the foregoing; all attachments and enclosures; all drafts or copies that differ in any respect from the original; and all handwritten notations or notes attached on the front or back via adhesive or the like. A draft or non-identical copy is a separate document within the meaning of this term.

11.    The term "communication" includes any written or oral transmission of facts, information or opinion, including any utterance, notation, or statement of any nature whatsoever, including, but not limited to, documents, correspondence and telephone conversations.

12.    The term "identify" means:

a.     When referring to a person, "identify" means to give, to the extent known, the person's full name, present or last known address and telephone number, and, when

referring to a natural person, the present or last known place of employment. Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

b.    When referring to a document, "identify" means to provide, to the extent known: (1) a true and exact copy of the document;    (2) the type of documents; (3) the general subject matter; (4) the date of the document; and (5) the author(s), addressee(s), and recipient(s).

c.    When used in connection with a communication, "identify" means state whether the communication was written or oral. If the communication was written, identify the document which constitutes the writing and provide a true copy of the same. If the communication was oral, identify all parties to the communication, the date and place of the communication and, as precisely as possible, what was said. With respect to all communications, identify all and all documents concerning the date or content of the communication, including any memoranda, notes, minutes, or recording.

13.    The term "person" or "party" means any natural person, or any business, legal or governmental entity or association.

14.    Any interrogatory requesting you to identify "all facts" for a given statement, contention, belief, allegation, or response means to provide a detailed recitation separately itemizing every evidentiary fact in your awareness relevant to proof, at trial, of the subject statement, contention, belief, allegation or response. Identifying "all facts" also means identifying,

in detail, all sources for each such relevant evidentiary fact (i.e., document, oral communication, etc.).

15.    The term "ESI" shall refer, mean, and include electronic mail (e-mail), instant messaging (through services such as Yahoo or any other type of service or exchange), cellular phone texts (kept by Plaintiff or stored through Google, Plaintiff's cellular phone service provider, or Plaintiff's representative), voicemails (kept by Plaintiff or stored through Google, Plaintiff's cellular phone service provider, or Plaintiff's representative), Facebook, Twitter, or any Document that has been preserved and/or stored in an electronic format.

16.    The term "Document" includes both the original and each copy that contains any additional writing, notation or interlineation, or is in any respect not an identical copy of the original. Copies of the documents are to be produced in lieu of originals in the event that there are no originals.

17.    The term "Possession, Custody or Control" shall mean and refer to any Document person, including agents, representatives, or attorneys, and Plaintiff

a.    owns such document in whole or in part;

b.    has a right by contract, statute or otherwise to use, inspect, examine or copy such document on any terms;

c.    has an understanding, express or implied, that Plaintiff may use, inspect, examine or copy such document on any terms;

d.    has, as a practical matter, been able to use, inspect, examine or copy such document when Plaintiff has sought to do so;

e.    is an off-site storage for ESI which is used by Plaintiff.

Such documents shall include, without limitation, documents that are in the custody of Plaintiff's attorney(s) or other agents.

18.     The term "produce", when used in reference to documents requested herein, shall be construed to mean actually delivering copies of such documents to the undersigned.  Said production of documents shall be made in an orderly fashion, identifying each document or group of documents as they specifically relate to each interrogatory or request for documents herein.

## III.    INTERROGATORIES

1.  Identify all natural persons supplying answers to these interrogatories, as well as those assisting and/or consulted for these purposes. For each such person state the following:

    a.      full name;

    c.      business address;

    d.      occupation; and

    e.       relationship with WE.

2.  Identify the nature of WE's business, including, without limitation, the date of creation; date of incorporation (if applicable); and business reason.

3.  Describe the circumstances surrounding the origination, selection and/or adoption of the "Plush Toy Coqui" and "Plush Toy Parrot", including but not limited to, a) the date of origination, b) the derivation of the design, the meaning or suggestive connotation of the design, if any,  c) the identity of the person(s) who participated in the origination, selection and/or adoption of the designs; d) the persons who would have knowledge of matters involving the creation, design, or development of the "Plush Toy Coqui" and "Plush Toy Parrot".

4.  Identify and describe in detail the chain of title for the copyright(s) at issue in this case,

including but not limited to the original author or creator, all prior owners, and any transfers, assignments, or other conveyances of rights. Your response must include:

  a. The name and contact information of each individual or entity that previously owned or held rights to the copyright(s), including Mr. Rodríguez Miranda and any other prior owners.

  b. The date and manner (e.g., written assignment, contract, will, or other legal instrument) of each transfer of ownership or rights, including the transfer from the original author to Mr. Rodriguez Miranda in 2014 and from Mr. Rodiguez Miranda to Plaintiff WE in 2017.

  c. A description of the rights conveyed in each transfer, including whether the transfer was partial or complete, and any limitations or conditions imposed.

  d. The identity of all individuals involved in negotiating or executing the transfers.

  e. The existence of any documents, agreements, or communications evidencing the transfers, and whether such documents have been recorded with the U.S. Copyright Office

5. Identify each "Plush Toy Parrot" product, including variations or modifications of earlier products, that is the subject of Plaintiff's copyright claim in the *Complaint*, including each products':

  a. name;

  b.  model number;

  c. date of publication;

d. U.S. Copyright Registration Number and date of registration or, if not registered, date that any application and accompanying fee and depository materials for the product was received by the Copyright Office.

6. Identify each "Plush Toy Coqui" product, including variations or modifications of earlier products, that is the subject of Plaintiff's copyright claim in the Amended Complaint, including each products':

   a. name;

   b.  model number;

   c. date of publication;

   d. U.S. Copyright Registration Number and date of registration or, if not registered, date that any application and accompanying fee and depository materials for the product was received by the Copyright Office.

7. Identify and describe all elements of the "Plush Toy Coqui" and "Plush Toy Parrot" that Plaintiff claims are original and protected under copyright, including any creative choices that distinguish them from standard or commonly used plush toy designs.

8. Identify and describe all elements of the "Plush Toy Coqui" and "Plush Toy Parrot" that are similar to *Defendant's Toy Parrot Design* <u>and</u> *Defendant's Toy Coqui Design*.

9. Identify all specific elements of the "Plush Toy Coqui" and "Plush Toy Parrot" that Plaintiff claims constitute protectable trade dress. Specify which elements, if any, are non-functional.

10. Identify all facts that support or tend to support Plaintiff's claims, as alleged in Count II of the Complaint, that Defendants have violated the Lanham Act, (15 U.S.C. § 1125(a) including, but not limited to identifying:

a.  Each of Defendant's product, by name and model number, that allegedly violates Plaintiffs rights under the Lanham Act;

b.  How Defendant's products have caused or are likely to cause confusion among the general purchasing public;

c.  How Defendants have allegedly misrepresented and falsely described to the general public the origin and source of *Defendants' Plush Toy Designs*;

d.  How Defendants have allegedly created a likelihood of confusion for ultimate purchasers as to both the source and sponsorship of such merchandise; and

e.  How Defendants have falsely designated the origin of  *Defendants' Plush Toy Designs*, and ;

f.  Identify all Documents that support or tend to support such facts and the person(s) most knowledgeable about the facts and/or  Documents that are the subject matter of this Interrogatory.

11. State whether Plaintiff or any previous owner has ever applied for or obtained trade dress registration for the "Plush Toy Coqui" or "Plush Toy Parrot." If so, identify the registration number(s) and date(s) of registration.

12. State whether WE has lost sales as a result of the sales of *Defendant's Plush Toy Designs*; and the amount of WE's lost sales (consider the period of January 2020 to May 2024) and how such amounts were calculated.  In your response, please specify the time period in which you claim to have experienced lost sales or reduced revenue due to Defendants' alleged infringement.

13. Identify the date when WE first sold or offered to sell, in Puerto Rico, "Plush Toy Coqui" and "Plush Toy Parrot". If in different dates, please clarify accordingly. Produce any document in support of your response.

14. If the "Plush Toy Coqui" or "Plush Toy Parrot" were sold by any other person or entity before WE began selling them, identify all such persons or entities and explain the circumstances surrounding those sales, including the dates, locations of those sales. Produce any documents supporting your response.

15. Identify the locations in Puerto Rico where the "Plush Toy Coqui" and "Plush Toy Parrot" was sold during the period from 2020 to 2024. Specify the address of the locations and produce all documents in support of your response.

16. Identify each person, entity or commercial and/or retail outlet who distributed the "Plush Toy Coqui" and "Plush Toy Parrot" in Puerto Rico at any time during the period from 2020 to 2024, and specify whether any contract existed for the distribution or sale of these products. Produce any document in support of your response.

17. Identify all instances of actual confusion or likelihood of confusion in connection with the source, origin or affiliation of the "Plush Toy Coqui"/"Plush Toy Parrot"  and *Defendants' Plush Toy Designs* with each such event; and a full description of what was said and whether the  statement was voluntarily made or in response to a statement or inquiry by Plaintiff; and identify all Documents that support or tend to support such instances of actual or likely confusion and the person(s) most knowledgeable about the facts.

18. Describe in detail any efforts undertaken by Plaintiff to promote or advertise the "Plush Toy Coqui" and "Plush Toy Parrot", including the duration, geographic scope, and nature of such

efforts. Include in your response the types of media in which WE has advertised the "Plush Toy Coqui" and "Plush Toy Parrot" at any time from January 2020 to May 2024.

19. Identify the target consumer of the "Plush Toy Coqui" and "Plush Toy Parrot", including, without limitation, the age, gender, and social group of the customers to whom the toys are directed.

20. State whether WE conducted, commissioned, or reviewed any consumer surveys, market research studies, or industry reports measuring public recognition, brand association, or consumer demand for its "Plush Toy Coqui" and "Plush Toy Parrot" designs? If so, provide details on:

    a.    The date and scope of each survey or study;

    b.    The methodology used, including sample size and target demographics;

    c.    The key findings, particularly regarding consumer awareness, purchase intent, and brand loyalty;

    d.    Whether the results have been published, cited, or used in marketing or legal proceedings; and

    e.    Any third parties, agencies, or experts involved in conducting or analyzing the data.

21. State whether WE has identified or collected any media coverage, social media posts, or public discussions that highlight the popularity, consumer interest, or cultural significance of its "Plush Toy Coqui" and "Plush Toy Parrot" designs? If so, provide details on:

    a.    Any newspaper, magazine, or online articles featuring the plush toys, including publication names, dates, and key excerpts.

    b.    Television or radio segments discussing the toys, including network names, air dates, and transcripts if available.

c.     Any awards, recognitions, or endorsements the plush toys have received from media outlets, industry groups, or public figures.

d.     Notable posts, hashtags, or trends related to the plush toys on platforms such as Instagram, Facebook, TikTok, or X (Twitter).

e.     Engagement metrics (likes, shares, comments) on WE's official posts promoting the plush toys.

f.     Any viral moments, user-generated content, or influencer endorsements involving the plush toys.

g.     Mentions of the plush toys in tourism, educational, or cultural initiatives in Puerto Rico or beyond.

h.     Any partnerships with organizations, museums, or government entities that showcase or distribute the plush toys.

i.     Consumer testimonials, online reviews, or forum discussions that demonstrate recognition and demand for the products.

22. Identify the retail price (or price range, if applicable) of the "Plush Toy Coqui" and "Plush Toy Parrot" in Puerto Rico from January 2022 until May 2025. Produce all documents in support of your response, including, without limitation, price lists adopted and/or approved by WE.

23. State whether Plaintiff is aware of any third parties—other than Defendant—offering for sale plush toys that incorporate elements similar to those in Plaintiff's claimed trade dress. If so, identify such third parties and explain any actions taken by Plaintiff regarding their products.

24. Identify all facts, documents, legal authority, or other information that WE relies on to

13

support the contention that Defendants have manufactured, imported, distributed, sold, or offered for sale unauthorized or counterfeit plush toy designs that infringe WE's copyrighted designs. (ECF No. 42). Identify each person with knowledge of the facts supporting such contention.

25. Identify all facts, documents, legal authority, or other information that WE relies on to support the contention that Defendants' alleged infringement has caused economic harm including dilution of brand reputation (ECF No.42). Identify each person with knowledge of the facts supporting such contention.

26. Describe how Plaintiff calculates its alleged damages, including the methodology, assumptions, and any experts relied upon for such calculations.

27. Identify all customers, retailers, or distributors who allegedly stopped or reduced purchasing Plaintiff's "Plush Toy Coqui" and/or "Plush Toy Parrot" due to Defendant's alleged infringement.

28. Identify all facts, documents, legal authority, or other information that WE rely on to support the contention that Defendants acted wilfully and with knowledge of WE's copyrights in manufacturing, distributing, and selling the allegedly infringing plush toy designs. (ECF No. 42). Identify each person with knowledge of the facts supporting such contention.

29. State whether Plaintiff has ever licensed, assigned, or otherwise authorized any third party to produce, distribute, or modify the "Plush Toy Coqui" and "Plush Toy Parrot." If so, identify all such entities and describe the terms of the agreement.

30. Identify all facts, documents, legal authority, or other information that WE rely on to support its contention that Defendant had access to its plush toy designs before Defendant

created its own plush toys. If so, explain the basis of this contention, including how, when, and where Defendants allegedly obtained access.

## IV. REQUEST FOR PRODUCTION OF DOCUMENTS

1. Identify and provide copy of each and every document identified or mentioned in your answers to the preceding interrogatories.

2. Provide copy of all documents evidencing the creation, design, or development of the "Plush Toy Coqui" and "Plush Toy Parrot," including but not limited to sketches, prototypes, blueprints, design drafts, and communications with third parties regarding the design process.

3. Provide copy of all documents concerning the identity of the designer of the "Plush Toy Coqui" and "Plush Toy Parrot", including but not limited to documents sufficient to identify that designer, and any agreements you have with such designer.

4. Identify and provide copy of all statements, notes, memoranda or writings of any kind obtained from any person which in any way relate to WE's allegations in the Amended Complaint.

5. Identify and provide all correspondence, including electronic correspondence, exchanged between WE and any person or entity regarding the facts alleged in the Amended Complaint.

6. Produce copy of the entire file for copyright registration of the "Plush Toy Coqui", including but not limited to

   a.    Certificate of registration.

b.    All applications for copyright, revisions, amendments, and enclosures or attachments to applications, including but not limited to photographs, drawings, deposit copies, or the like;

c.    All correspondence concerning all applications for such item, including rejections, questions, explanations, or any information relating to the application.

d.    All correspondence or communications with authors or designers of this product, or any similar products;

e.    Assignments or requests for assignments of rights to copyright protection for such item.

7.  Produce copy of the entire file for copyright registration of the "Plush Toy Parrot", including but not limited to:

a.    Certificate of registration.

b.    All applications for copyright, revisions, amendments, and enclosures or attachments to applications, including but not limited to photographs, drawings, deposit copies, or the like;

c.    All correspondence concerning all applications for such item, including rejections, questions, explanations, or any information relating to the application.

d.    All correspondence or communications with authors or designers of this product, or any similar products;

e.    Assignments or requests for assignments of rights to copyright protection for such item

8.  Identify and provide copy of all documentation required under Fed. R. Civ. P. 26 for each and every expert witness you intend to present at trial.

9.  Identify and provide copy of all documents prepared by an expert(s) which refer or relate to the allegations in the Amended Complaint ,including documents relied upon by the expert for his/her opinion.

10. Produce all documents related to the purported Transfer of Copyright Agreement, including but not limited to:

    a.    The original agreement, any drafts, amendments, or modifications.

    b.    Communications (emails, letters, messages) between the plaintiff and any third party discussing the transfer, its necessity, or execution.

    c.    Documents evidencing when and how the agreement was negotiated, drafted, or executed.

    d.    Metadata or any records indicating the date of creation and modification of the agreement.

11. Produce all documents including but not limited to correspondence, emails, internal memoranda, or reports, that reflect the date and circumstances under which Plaintiff first became aware of *Defendants' Plush Toy Design*, which are the subject of this lawsuit.

12. Any documents that reflect the sales of the "Plush Toy Coqui" and "Plush Toy Parrot" by Plaintiff, including invoices, sales receipts, contracts, or any documentation reflecting transactions with retailers, distributors, or consumers

13. All documents relating to Plaintiff's claimed trade dress for the "Plush Toy Coqui" and "Plush Toy Parrot," including any documents that describe, define, or delineate the elements Plaintiff claims to be protectable as trade dress.

14. All documents related to Plaintiff's marketing strategy for the "Plush Toy Coqui" and "Plush Toy Parrot," including but not limited to marketing plans, budgets,

communications with marketing or advertising firms, and any documents discussing the trade dress of the products from 2019 to May 2024.

15. Produce copies of promotional, or advertising materials used by Plaintiff in connection with the "Plush Toy Coqui" and "Plush Toy Parrot" from 2019 to May 2024, including catalogs, online advertisements, print advertisements, social media posts, or any other promotional content.

16. Produce surveys, studies, or reports (including consumer surveys) conducted or commissioned by Plaintiff to determine whether the trade dress of the "Plush Toy Coqui" and "Plush Toy Parrot" has acquired secondary meaning or is recognized by consumers as originating from Plaintiff.

17. Produce documents related to Plaintiff's enforcement of its trade dress rights, including any cease-and-desist letters, legal actions, or complaints made by Plaintiff regarding alleged infringement of its trade dress by third parties.

18. Produce any documents reflecting instances of alleged consumer confusion between the Plaintiff's products and Defendant's products, including customer complaints, surveys, or other evidence.

19. Produce all documents reflecting Plaintiff's claim of lost sales, including sales records, customer communications, and any documents showing a decrease in sales or market share due to the alleged infringement by Defendant.

20. Produce all documents related to any economic damages calculations or expert reports Plaintiff intends to rely upon to support its claim for lost profits or other damages arising from the alleged infringement.

21. Produce all communications or documents that show Plaintiff's attempts to mitigate its claimed damages, including actions taken to recover lost sales or prevent further infringement by Defendant.

22. Produce documents related to Plaintiff's revenue, sales, and profits from the "Plush Toy Coqui" and "Plush Toy Parrot" from 2019-2024.

23. Produce all documents concerning Plaintiff's production of the "Plush Toy Coqui" and the "Plush Toy Parrot" from 2019-2024.

24. Produce all financial records, reports, invoices, sales summaries, or other documents sufficient to show the gross and net profits from sales of the "Plush Toy Coqui" and "Plush Toy Parrot" by or on behalf of Plaintiff. This request includes, but is not limited to, documents reflecting the quantity sold, unit price, cost per unit, and the date of each sale. The time period for this request is limited to 2019-2024.

25. Produce all documents evidencing annual expenses in advertisement and marketing, promotion for the "Plush Toy Coqui" and "Push Toy Parrot" since 2019 to May 2024.

26. Produce all documents prepared or caused to be prepared by Plaintiff which depict or display the design for the "Plush Toy Coqui" in whole or in part, including without limitation artwork underlying such products.

27. Produce all documents prepared or caused to be prepared by Plaintiff which depict or display the design for the "Plush Toy Parrot" in whole or in part, including without limitation artwork underlying such products..

28. Produce all documents concerning Plaintiff's distributors of the "Plush Toy Coqui" and the "Plush Toy Parrot" from from 2019-2024, including, but not limited to, the identity of each manufacturer.

29. Produce documents sufficient to identify all Officers and Directors of Plaintiff from July 17, 2017, to the present.

30. Produce all documents and things furnished or supplied to each of Plaintiff's experts in connection with this litigation, including the identity of each document and thing by Bates number.

31. Identify and provide copy of each and every document, tangible things and/or real and demonstrative evidence that you intend to use in the trial for this case.

32. Identify and provide copy of each and every document, tangible things and/or real and demonstrative evidence related to WE''s allegations in the Amended Complaint, even if you do not intend to use these documents at trial.

In San Juan, Puerto Rico, this 1st day of April 2025.

**WE HEREBY CERTIFY:** that on this same date the foregoing *First Set of Interrogatories and Request for Production of Documents* to Plaintiff WE, LLC d/b/a Wild Encantos was delivered to his counsel via electronic mail at their electronic address of record.

**ADSUAR**
*Counsel for the Defendants*
P.O. Box 70294
San Juan, PR 00936-8294
Tel.: 787.756.9000/Fax: 787.756.9010

*/s/Luis Perez-Giusti*
LUIS PEREZ GIUSTI
USDC-PR No. 208608
lpg@amgprlaw.com

*/s/ Alexandra Casellas Cabrera*
ALEXANDRA CASELLAS CABRERA
USDC-PR 301010
acasellas@amgprlaw.com

20