UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

| | |
|---|---|
| WE, LLC d/b/a WILD ENCANTOS., <br><br> Plaintiff, <br><br> v. <br><br> CARIBBEAN RETAIL VENTURES, INC., SALOMON ABADI, Jane Doe, and their conjugal partnership; JOEL BENDER, Susan Roe, and their conjugal partnership, <br><br> Defendants. | Civil No. 3:24-cv-01185 (CVR) <br><br><br> Re: Copyright Infringement |

**DEFENDANTS' RENEWED MOTION TO COMPEL DISCOVERY
AND FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 37**

**TO THE HONORABLE COURT**:

 **COMES NOW**, Defendants Caribbean Retail Ventures, Inc., Salomon Abadi, his spouse, and their conjugal partnership; and Joel Bender, his spouse, and their conjugal partnership (collectively, "Defendants"), by and through their undersigned counsel, respectfully move this Court for an Order compelling Plaintiff WE, LLC ("Plaintiff") to provide full and complete responses to Defendants' outstanding discovery requests and for sanctions. In support of this Motion, Defendants state as follows:

**I. INTRODUCTION AND OVERVIEW**

 This case initiated nearly two years ago, concerns claims of copyright infringement and false designation of origin under the Lanham Act. Despite the passage of this considerable time, Plaintiff has failed to produce the most fundamental documents supporting its claims, including the copyright registration certificates for the works it alleges were infringed. More broadly, Plaintiff has engaged in a sustained campaign of discovery obstruction, ignoring a Court-filed agreement, defying this Court's directive to meet and confer, and rendering a Rule 30(b)(6)

deposition ineffective by withholding agreed-upon, plainly relevant documents. Plaintiff now attempts to justify its refusal to produce core financial and sales data by citing a potential election of statutory damages—a post-hoc litigation position that contradicts the specific prayers for relief in its own *Amended Complaint*.

Defendants have exhausted every good-faith effort to resolve this dispute, including offering strict confidentiality agreements. Plaintiff's intransigence has left Defendants unable to prepare a defense on the eve of the discovery deadline, necessitating this Court's immediate intervention.

## II. PROCEDURAL HISTORY AND BACKGROUND OF THE DISPUTE

1. The instant discovery crisis is a direct continuation of the dispute presented in Defendants' prior Motion to Compel (**Dkt. 58**), filed August 4, 2025. That motion detailed Plaintiff's failure to substantively respond to Interrogatories and Requests for Production ("RFPs") concerning copyright ownership, design history, sales, and consumer confusion—the very foundation of its case.

2. On August 26, 2025, this Court entered an Order (**Dkt. 67**) directing the parties to meet and confer.

3. Following the Court's Order, the parties' counsel met and conferred. In a detailed email on September 12, 2025, Defendants' counsel outlined the specific interrogatories and document requests requiring supplementation, including those related to copyright transfers, financial data, consumer confusion, design history, and prior litigation. The email proposed—and Plaintiff's counsel agreed to—an October 3, 2025 deadline for Plaintiff to provide complete responses. See **Exhibit A.**

4. The parties filed a *Motion in Compliance with Order* (**Dkt. 70**) on September 12, 2025. In that filing, Plaintiff expressly and unambiguously agreed to "address and, to the extent necessary, supplement its responses to Defendants' requests for production on or before **October 3, 2025**."

5. Plaintiff breached this Court-filed agreement. Despite Defendants' extensions and follow-up emails on October 3, 9, and 16, 2025, Plaintiff produced nothing. See **Exhibit B**.

6. Faced with this silence, Defendants served a Notice of Rule 30(b)(6) Deposition on November 25, 2025. See **Exhibit C**. Exhibit B to that Notice specifically incorporated the RFPs from the September agreement that Plaintiff had ignored, representing a good-faith effort to secure production through an alternative mechanism.

7. On December 5, 2025, mere hours before the scheduled deposition, Plaintiff transmitted a set of documents ostensibly in response to the document requests in the November 25 Notice. This production, however, was entirely non-responsive and duplicative. Every document provided had already been filed as an exhibit to Plaintiff's initial Complaint at Docket 1. This last-minute, non-substantive submission underscores the pattern of bad-faith compliance—offering the appearance of production while withholding all newly requested, material information. See **Exhibit C.**

8. Consequently, on December 5, 2025, Defendants were forced to depose Plaintiff's corporate representative, Mr. Ángel Rodríguez Miranda, **without** the foundational documents necessary for a meaningful examination. This deposition was taken subject to continuation.

9. Following the December 5 session, Defendants again demanded compliance via email on January 20, 2026, re-delivering all prior communications and the outstanding requests prior to the deposition's continuation. See **Exhibit D**. Plaintiff did not comply.

10. The continued deposition, originally scheduled for January 23, 2026, was postponed at Plaintiff's request due to counsel's travel and weather conditions, and was ultimately held on February 5, 2026.

11. On or about February 2, 2026—over *four months* past its agreed deadline—Plaintiff provided a supplemental production. See **Exhibit E**. As detailed in Defendants' final meet-and-confer letter of February 3, 2026, this production was **woefully deficient and non-responsive**, consisting either of documents that had already been produced or materials wholly *unrelated* to the specific requests at issue. See **Exhibit E.**

12. As a last resort, on February 5, 2026, immediately following the continued deposition, defense counsel contacted Plaintiff's counsel to discuss a resolution, expressly offering to enter into a strict confidentiality or "Attorneys' Eyes Only" protective order to alleviate any purported concerns. Plaintiff rejected this accommodation.

13. On that same date, in a formal letter, Plaintiff's counsel confirmed its refusal to comply with the core discovery demands. The letter reiterated Plaintiff's position that sales and financial records are "irrelevant" due to a potential election of statutory damages—a position contradicted by its pleadings—and otherwise failed to provide any substantive justification for withholding the requested design, manufacturing, and consumer confusion documents. This letter represents Plaintiff's final, definitive refusal to fulfill its discovery obligations. See **Exhibit F.**

Plaintiff has now frustrated every extrajudicial mechanism: (1) a motion to compel; (2) a Court-ordered meet and confer; (3) its own written agreement to produce; (4) multiple follow-ups; (5) a Rule 30(b)(6) notice re-propounding the requests; (6) post-deposition demands; and (7) an in person meeting with plaintiff's counsel accompanied by an offer of stringent confidentiality protections.

## III. DICUSSION AND ANALYSIS

**A. Plaintiff's Pleadings Affirmatively Place Its Financial Data and Damages at Issue.**

Plaintiff's assertion that its financial data is irrelevant because it "may" elect statutory damages is legally incorrect and contradicted by its own pleadings. In Count I (Copyright Infringement), Plaintiff expressly seeks "Plaintiff's lost profits and the Defendants' profits, or at Plaintiff's election, an award of statutory damages." (Am. Compl. ¶ 64; see also Prayer for Relief). In Count II (Lanham Act), Plaintiff affirmatively alleges that it "has suffered monetary damages" and seeks recovery of "Plaintiff's lost profits and the Defendants' profits." (Am. Compl. ¶¶ 75, Prayer for Relief). Plaintiff cannot plead actual damages and lost profits as core remedies while simultaneously withholding the very financial data necessary to calculate—or test—them.

Courts routinely reject attempts to shield financial discovery on the theory that statutory damages may later be elected. In *Energy Intelligence Group, Inc. v. Kayne Anderson Capital Advisors, L.P.,* 948 F.3d 261, 275 (5th Cir. 2020), the Fifth Circuit held that a copyright plaintiff's sales and revenue data remained relevant and discoverable even where statutory damages were available. The court explained that although statutory damages under 17 U.S.C. § 504 serve deterrent and punitive purposes, they also carry a compensatory component, and courts may consider evidence of lost revenues and related financial data when determining an appropriate award within the statutory range.

As *Energy Intelligence* makes clear, statutory damages are not awarded in a vacuum. Rather, courts may consider "the plaintiff's lost revenues" and other financial context in exercising their discretion, even when actual damages are difficult to prove. *Id.* (citing *Bryant v. Media Right*

*Prods., Inc.,* 603 F.3d 135, 144 (2d Cir. 2010))[1]. Thus, while proof of actual damages is not a prerequisite to statutory damages, evidence of sales, revenue, and profits remains relevant to assessing the nature and extent of the alleged harm and the appropriate measure of relief.

Here, Plaintiff's sales, revenue, and profit data are directly relevant to multiple issues central to this case, including:(1) quantifying Plaintiff's claimed "lost profits"; (2) testing the factual basis for Plaintiff's alleged "commercial injury" under the Lanham Act; (3) informing any reasonable assessment of statutory damages, should Plaintiff elect that remedy; and (4) enabling Defendants to present defenses concerning the scope of commerce, market impact, and consumer perception.

Plaintiff's attempt to avoid producing financial discovery by invoking a hypothetical future election of statutory damages is therefore unsupported by law and inconsistent with both its Complaint and controlling authority. The requested financial data falls squarely within the scope of relevance under Rule 26 and must be produced.

### B. The Withheld Documents Are Central to Plaintiff's Claims and Defendants' Defenses

The withheld documents go to the heart of Plaintiff's claims and Defendants' defenses. Plaintiff's blanket refusal and deficient responses are indefensible, as confirmed by its own deposition testimony:

---

[1] In *Curet-Velázquez v. ACEMLA de P.R.,* 656 F.3d 45 (1st Cir. 2011) the court the court acknowledged that, while statutory damages are an alternative to actual damages, the court may still consider factors such as "the revenues lost by the plaintiffs as a result of the defendant's conduct" when determining the amount of statutory damages to impose.". In *Hernandez v. Sony*, 2003 U.S. Dist. LEXIS 7922 (DPR February 3, 2003 the court noted that, in determining statutory damages under, 17 USC Sec. 504 it may examine factors such as "revenues lost by the plaintiffs" and "the expenses saved and profits reaped by the defendant." Additionally, in *Rare Blue Music, Inc. v. Guttadauro*, 616 F. Supp. 1528 (D. Mass. 1985) the court emphasized that factors such as "revenues lost by the plaintiffs" and "expenses saved and profits reaped by defendants" are relevant considerations in awarding statutory damages.

**1. Design & Manufacturing History (*Deposition Notice* Ex. B, Req. 7, 18, 19 [Exhibit C]; corresponding to Interrogatory 3 and RFPs 2-3 [Dkt. 581-1]):**

These requests seek documents related to the conception, creation, and development of the plush toy designs, including sketches, prototypes, and communications with any manufacturer regarding design, samples, approvals, and revisions.

These are material in the case because this history is foundational to Plaintiff's copyright claim, particularly in light of its own pleadings. In its Amended Complaint, Plaintiff relies heavily on the Court's prior ruling in *Coquico, Inc. v. Rodriguez Miranda* to establish the validity of "these specific designs." (Am. Compl. ¶ 11). However, the plush toy models at issue in that prior litigation are demonstrably *different* from those alleged in the instant case. See **Exhibit G** and **Dkt. 42** p. 3 Plaintiff sells multiple variations of Coqui plush toys, differing in size, color, stitching, and pose. The requested design and manufacturing documents are therefore essential to determine: (a) the **originality and scope** of the protectable expression in the *specific products at issue here*; (b) whether **derivative works** were created, which directly impacts the validity and chain of title of the asserted copyrights; and (c) whether Defendants had **access** to the specific, protectable elements of Plaintiff's current products. Plaintiff's own Rule 30(b)(6) witness testified that such communications with manufacturers exist and that prototypes were received, confirming the documents are within its possession. Plaintiff cannot claim a static, original design validated by a prior case involving different products while withholding the entire development record for the works it now asserts.

2. **Sales, Revenue, and Financial Data (Deposition Notice Ex. B, Req. 11, 12, 15, 20 [Exhibit C] corresponding to Interrogatories 12, 15 and RFPs 12, 14, 19, 22-28 [Dkt. 58-1]):**

These requests seek sales records, revenue summaries, profit data, and distribution channel documentation for the years 2020-2024.

The data requested is not merely relevant; it is central to the pleaded claims for relief. Plaintiff's *Amended Complaint* explicitly seeks recovery of its "lost profits" and Defendants' "profits gained" under both the Copyright and Lanham Acts. **Dkt. 42** at ¶¶64 and 75. It is impossible to litigate a claim for actual damages while hiding the financial figures. Furthermore, as established above, this data is essential to assess the commercial scale of the operation, which informs any potential statutory damage award and is a core component of the Lanham Act claim for commercial injury.

The corporate representative of plaintiff confirmed in deposition that all such data is maintained electronically in the form of Excel files and that it uses an online platform called *Invoice to go* which records and maintains the requested information, and Defendants have offered an "Attorneys' Eyes Only" protective order.

3. **Consumer Confusion Evidence (Deposition Notice Ex. B, Req. 17 [Exhibit C]; corresponding to RFP 18 [Dkt. 58-1]):**

The requests seek records of communications (emails, texts, call logs, notes) from any person expressing confusion between the parties' products.

Actual consumer confusion is the core element of Plaintiff's false designation of origin claim under the Lanham Act (15 U.S.C. § 1125(a)). Plaintiff's own discovery responses and deposition testimony affirm the existence of this evidence. In its Interrogatory responses, Plaintiff vaguely asserted that confusion occurred on a "multiple on weekly basis through phone call and personal encounters." (**Dkt. 58-2** at p. 5) During his December 5, 2025 deposition, Plaintiff's

corporate representative, Mr. Rodríguez Miranda, materially expanded on this, testifying under oath that he personally received specific text messages and photos from individuals expressing concern or confusion about Defendants' products. Despite these representations—first vague, then specific under oath—Plaintiff has produced not a single communication, call log, or contemporaneous note in response to formal discovery requests or when confronted in person during the deposition. This refusal is indefensible. Plaintiff cannot credibly allege widespread, weekly consumer confusion—a serious allegation central to its Lanham Act claim—while withholding the very communications and records it claims prove that confusion exists.

4. **Marketing Materials (Deposition Notice Ex. B, Req. 22 [Exhibit C]; corresponding to RFP 22 [Dkt. 58-1]):**

These requests seek flyers, social media posts, online listings, and other promotional materials featuring the plush toys.

These materials constitute direct, objective evidence critical to Plaintiff's claim in Count II (False Designation of Origin) that its product design has acquired "secondary meaning" and distinctiveness in the marketplace—a necessary element to establish protectable trade dress under the Lanham Act. As courts have recognized, proof of secondary meaning entails "vigorous evidentiary requirements." *Yankee Candle Co. v. Bridgewater Candle Co.*, 259 F.3d 25, 43 (1st Cir. 2001). While the most probative evidence may be consumer surveys, circumstantial evidence—particularly the nature, extent, duration, and channels of a plaintiff's advertising and promotion—is a paramount factor in this analysis. *Id.*; *see also, Boston Beer Co. v. Slesar Bros. Brewing Co.*, 9 F.3d 175, 182 (1st Cir. 1993). Critically, such advertising must specifically direct consumers to the features claimed as trade dress to foster a conscious connection in the public's mind. *Yankee Candle*, 259 F.3d at 44. By withholding its entire marketing and advertising portfolio, Plaintiff not only prevents Defendants from examining the very proof required to establish its own claim, but

it also forecloses Defendants' ability to test whether Plaintiff's promotional efforts were even of the specific character required by law to support a finding of secondary meaning. Defendants cannot assess the sufficiency, reach, or consistency of Plaintiff's promotional efforts, nor can they prepare a meaningful defense to this essential element, without these materials. Plaintiff's refusal to produce them is a direct impediment to adjudicating the merits of Count II.

5. **Prior Litigation & Chain-of-Title Documents (Deposition Notice Ex. B, Req. 5, 6, 8, 10 [Exhibit C]; corresponding to Interrogatory 4, 23 and RFPs 10, 21 [Dkt. 58-1]):**

These requests seek Complete documentation of the transfer of copyrights from the prior litigant/owner to Plaintiff, and all files from the related *Coquico* litigation.

These documents are foundational to Plaintiff's standing to sue and the validity of the asserted copyrights. Plaintiff's claim rests on a transfer of rights from a judicial sale to Mr. Rodríguez Miranda and then to plaintiff WE, LLC. The prior litigation files are necessary to understand the precise scope of the rights previously adjudicated and purportedly transferred. To date, Plaintiff has produced only two tangential documents: (1) a *Notice of Judicial Sale* from the District Court, which merely announces that a public sale *will be held*; and (2) a *Certificate of Recordation* from the U.S. Copyright Office, which only confirms that *a document was filed*. Neither document defines the rights allegedly transferred, and neither confirms that a transfer to *this Plaintiff* ever actually occurred. They are administrative notices not conveying legal rights. When questioned at deposition, Plaintiff's representative could only state that he would "look" for additional documents, yet none have been forthcoming. Directing Defendants to a public docket is an improper attempt to shift Plaintiff's production burden under Rule 34. Plaintiff's failure to locate and produce the fundamental agreement after nearly two years of litigation raises serious questions about the viability of its claims and prejudices Defendants' ability to challenge a core element of the case. Should Plaintiff later "uncover" these documents, it would constitute unfair

sandbagging. The Court should compel Plaintiff to either produce the documents or provide a sworn affidavit detailing the specific, diligent searches undertaken and confirming their non-existence.

## IV. LEGAL STANDARD

Federal Rule of Civil Procedure 37(a) permits a motion to compel when a party fails to respond to discovery. Rule 37(a)(5)(A) mandates an award of reasonable expenses, including attorney's fees, unless the non-disclosing party's position was substantially justified. Sanctions are also appropriate under Rule 37(b) for failure to comply with a court order and the Court's inherent powers to sanction bad-faith litigation conduct.

### A. Plaintiff's Conduct Warrants Sanctions

Plaintiff's pattern of discovery violations is severe, repeated, and deliberate, with no legitimate explanation. First, it agreed to produce specific documents by October 3, 2025, in a Court-filed agreement, then reneged. Second, it lodged frivolous objections, such as claiming financial data is irrelevant despite pleading for lost profits. Third, it refused reasonable accommodations like an "Attorneys' Eyes Only" protective order. This conduct mirrors the "deliberate pattern of stonewalling" sanctioned in *AngioDynamics, Inc. v. Biolitec AG*, 780 F.3d 429, 436 (1st Cir. 2015). Under Rule 37, courts must weigh factors like the severity of violations, repetition, deliberateness, and prejudice. *Vallejo v. Santini-Padilla*, 607 F.3d 1, 8 (1st Cir. 2010). Here, Plaintiff's violations are severe—it failed to supplement *any* of the deficiencies outlined in the September 12 meet-and-confer. The violations are repeated, spanning multiple requests and mechanisms over six months. They are deliberate, as shown by Plaintiff's rejection of a confidentiality solution. Prejudice is acute: Defendants conducted a critical Rule 30(b)(6)

deposition without foundational documents, impairing their examination and wasting time. With discovery closing, Defendants lack core information needed to defend the case.

The history above satisfies all meet-and-confer requirements under Rule 37(a)(1) and Local Rule 26(b). The February 5, 2026, offer of a confidentiality agreement underscores Defendants' good faith and Plaintiff's unwillingness to resolve the dispute.

It is well established that relevance is construed broadly. See Klonoski v. Mahlab, 156 F.3d 255, 267 (1st Cir. 1998). Here, each category of withheld documents maps directly onto an element of Plaintiff's claims or Defendants' defenses. Plaintiff cannot plead a case for actual damages and lost profits while hiding the numbers. It cannot claim distinctive, original designs while hiding their development history. It cannot allege consumer confusion while hiding the evidence.

Furthermore, Plaintiff's misconduct has forced Defendants to expend significant resources to chase basic discovery. An award of fees and costs incurred in making this motion and all prior efforts to secure this discovery since September 12, 2025, is mandatory under Rule 37(a)(5)(A). Furthermore, to cure the profound prejudice and given the extreme delay, the Court should preclude Plaintiff from introducing at trial any evidence related to the subjects of the withheld discovery, including but not limited to evidence of damages, design originality, and consumer confusion. See Fed. R. Civ. P. 37(b)(2)(A)(ii). Given that Plaintiff has not even produced its copyright registrations, the Court should also consider whether an award of statutory damages remains an available remedy.

**WHEREFORE**, Defendants respectfully pray that this Court enter an Order: (1) compelling Plaintiff to provide full and complete responses, including all documents, to the discovery requests in the Rule 30(b)(6) Notice (Exhibit B) and the September 12, 2025 agreement within five (5) days; (2) awarding Defendants their reasonable attorneys' fees and costs incurred

in making this motion and all prior efforts to secure this discovery since September 12, 2025; (3) precluding Plaintiff from introducing at trial any evidence related to the subjects of any non-produced discovery should it fail to comply; and (4) granting such other and further relief as the Court deems just and proper.

**CERTIFICATION:** An electronic copy of the foregoing motion was filed with the Clerk of the Court using the CM/ECF system which will send notification of this filing to opposing counsel of record.

In San Juan, Puerto Rico, on this 9th day of February 2025.

**ADSUAR**
*Counsel for Defendants*
P.O. Box 70294
San Juan, PR 00936-8294
Tel.: 787.756.9000
Fax: 787.756.9093


/s/ *Luis Pérez-Giusti*
LUIS PEREZ-GIUSTI
USDC-PR 208608
lpg@amgprlaw.com


/s/ *Alexandra Casellas Cabrera*
ALEXANDRA CASELLAS CABRERA
USDC-PR 301010
acasellas@amgprlaw.com
