| | |
|---|---|
| WE, LLC d/b/a WILD ENCANTOS., | Civil No. 3:24-cv-01185 (CVR) |
| Plaintiff, | |
| v. | |
| CARIBBEAN RETAIL VENTURES, INC., SALOMON ABADI, Jane Doe, and their conjugal partnership; JOEL BENDER, Susan Roe, and their conjugal partnership, | Re: Copyright Infringement |
| Defendants. | |

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION WAIVING ACTUAL DAMAGES (Dkt. 78), REQUEST TO ENFORCE THE COURT'S DISCOVERY ORDER, AND REQUEST FOR SANCTIONS**

**TO THE HONORABLE COURT:**

**COME NOW** Defendants Caribbean Retail Ventures, Inc., Salomon Abadi, and Joel Bender (collectively "Defendants"), through undersigned counsel, and respectfully submit this Opposition to Plaintiff's *Motion Waiving Actual Damages* (the "Motion") (**Dkt. 78**). Defendants further request that the Court enforce its prior discovery order (**Dkt. 75**) and impose the sanctions previously requested in Defendants' Renewed Motion to Compel (the "Motion to Compel") (Dkt. 74). In support thereof, Defendants state as follows:

**I. INTRODUCTION**

1. As background, after Defendants moved to compel responses to multiple discovery requests (**Dkt. 74**), the Court granted the motion and ordered Plaintiff to supplement its discovery responses. *See* **Dkt. 75**.

2. On March 3, 2026, instead of complying with the Court's order, Plaintiff submitted what it labeled as "supplemental answers" to certain interrogatories and produced a limited set of

1

documents. *See* **Exhibit A**. That submission did not respond to the discovery the Court ordered Plaintiff to produce.

3.  The Court's Order (**Dkt. 75**) expressly granted Defendants' Motion to Compel and directed Plaintiff to provide "*full and complete responses, including all documents, to the discovery requests in the Rule 30(b)(6) Notice (Exhibit B) and the September 12, 2025 agreement by 3/3/2026.*" Rule 30(b)(6) Notice (Exhibit B) consists of twenty-three (23) document categories addressing, *inter alia*, design history of plaintiff's plush toys, communications with manufacturers, sales and revenue data, consumer confusion evidence, marketing materials, and chain-of-title documentation.

4.  Plaintiff's March 3, 2026 production did not provide documents responsive to many of these requests.

5.  In an effort to resolve the issue without Court intervention, Defendants' counsel wrote to Plaintiff's counsel on March 9, 2026 explaining that the production did not comply with the Court's Order and identifying the deficiencies. *See* **Exhibit B**.

6.  On March 10, 2026, Plaintiff's counsel responded by email attempting to justify the deficiencies. Plaintiff asserted that it does not possess certain materials such as prototypes and manufacturer communications and further argued that the identity of the manufacturers of the plush toys is not relevant. Plaintiff also reiterated its position that financial discovery need not be produced because it intends to pursue statutory damages rather than actual damages. *See* **Exhibit C**.

7.  That same day, Plaintiff filed its *Motion Waiving Actual Damages* (**Dkt. 78**) seeking to avoid producing financial discovery altogether.

8. Plaintiff's position is legally incorrect and procedurally improper. Even where statutory damages are sought under the Copyright Act, the requested materials remain **relevant** to liability, willfulness, the scope of alleged infringement, the determination of statutory damages, and Plaintiff's Lanham Act claim for which statutory damages are not available.

9. Plaintiff cannot avoid compliance with a court-ordered discovery obligation by unilaterally declaring that it will not pursue certain damages theories. *See Sentis Group, Inc. v. Shell Oil Co.*, 763 F. 3d 919,925-26 (8th Cir. 2014) (The court clarified that a party cannot unilaterally declare evidence irrelevant or undiscoverable simply because it does not align with their theory of the case.)

10. In the interest of narrowing the dispute Defendants do not further contest Plaintiff's responses as to several requests at this time, the present dispute therefore concerns **two (2) core** categories of discovery that remain *critical* to the claims and defenses in this case and that Plaintiff continues to <u>withhold</u> despite the Court's Order:

> **(1) the design, creation and manufacturing history of plaintiff's plush toys** (Requests 7, 18, 19), and
> **(2) Plaintiff's sales, revenue, and related financial data** (Requests 11, 12, 15, 20).

These categories go directly to the scope of the asserted copyrights, Plaintiff's theory of copying, ownership, validity of copyrights, as well as the marketplace presence of the products at issue, and the damages and Lanham Act allegations asserted in the Complaint.

## II. ANALYSIS AND STRATEGY

### A. Plaintiff Cannot Avoid Discovery by Electing Statutory Damages

#### *i. Plaintiff Previously Raised — and Abandoned — This Argument*

In its *Supplemental Answers* (**Exhibit A**) and later correspondence as shown in **Exhibit C**, Plaintiff argues that because it intends to seek statutory damages under the Copyright Act. This

argument is <u>not</u> new and was already addressed in Defendants' Motion to Compel **(Dkt. 74)** and rejected by the Court at **Dkt. 75**. Plaintiff did not contest that argument then, nor does it meaningfully address it now. The court should consider Plaintiff's argument waived.

<u>*ii. Plaintiff Intentionally Withheld the Ordered Financial Discovery*</u>

Plaintiff's own supplemental responses confirm that it intentionally withheld this information. *See* **Exhibit A**. Instead of producing the requested sales and financial records, Plaintiff asserted that it "does not seek lost profits under either the Copyright or Lanham Act" and claimed there is "no way" to demonstrate a causal nexus between its sales and Defendants' alleged conduct. *Id.* On that basis, Plaintiff stated that it had waived any claim to actual damages under the Copyright Act and would instead seek statutory damages. Plaintiff therefore produced no sales records, point-of-sale data, revenue summaries, invoices, or similar financial documents for the relevant period. Rather than complying with the Court's Order, Plaintiff subsequently filed the *Motion* at **Dkt. 78** seeking to avoid producing that discovery altogether.

<u>*iii. Courts Routinely Hold That Financial Discovery Is Relevant Even When Statutory Damages Are Available*</u>

As explained in **Dkt. 74** Courts routinely reject attempts to shield financial discovery on the theory that statutory damages may later be elected. In E*nergy Intelligence Group, Inc. v. Kayne Anderson Capital Advisors, L.P.,* 948 F.3d 261, 275 (5th Cir. 2020), the Fifth Circuit held that a copyright plaintiff's sales and revenue data remained **<u>relevant and discoverable</u>** even where statutory damages were available. The court explained that although statutory damages under 17 U.S.C. § 504 serve deterrent and punitive purposes, they **<u>also</u>** carry a <u>compensatory component</u>, and courts may consider evidence of lost revenues and related financial information when determining an appropriate award within the statutory range. *See,* also, B*ryant v. Media Right Prods., Inc.*, 603 F.3d 135, 144 (2d Cir. 2010).

Courts in our Circuit have consistently recognized that financial information remains relevant even where statutory damages are sought. In *Curet-Velázquez v. ACEMLA de P.R.*, 656 F.3d 45 (1st Cir. 2011), the First Circuit acknowledged that courts may consider factors such as the revenues lost by the plaintiff when determining the appropriate statutory damages award. Similarly, *Hernández v. Sony*, 2003 U.S. Dist. LEXIS 7922 (D.P.R. Feb. 3, 2003) and *Rare Blue Music, Inc. v. Guttadauro,* 616 F. Supp. 1528 (D. Mass. 1985) recognize that courts may evaluate lost revenues, expenses saved, and profits reaped by the defendant in assessing statutory damages. These authorities confirm that statutory damages are not determined in a vacuum and that financial evidence remains relevant.

Here, Plaintiff's sales, revenue, and profit data in the Rule 30(b)(6) Notice (Exhibit B to Defendants' Motion to Compel at **Dkt. 74-3**, Requests Nos. 11, 12, 15, and 20) remain relevant to multiple issues central to this case, including informing the court in its determination of statutory damages.

### *iv. Financial Discovery Is Necessary to Test Plaintiff's Theory of Copying*

Financial and point-of-sale data are in this case independently relevant to Plaintiff's theory of copying of the copyright claim. Defendants have maintained the argument that defendants' copied Plaintiff's plush toy designs after encountering Plaintiff's products in the marketplace, including in retail locations such as those serving travelers in San Juan. *See* Complaint at Dkt. 1-1, p. 3. As explained in Plaintiff's corporate representative's deposition, Plaintiff's theory presumes that Defendants would have crossed paths with Plaintiff's products during the relevant time period.

Therefore, sales records, distribution information, and point-of-sale data are therefore necessary to test that allegation—specifically, whether Plaintiff's products were in fact being sold

at the locations and during the time periods Plaintiff claims, and whether Defendants could plausibly have encountered them. Without such information, Defendants are deprived of the ability to evaluate and challenge the factual basis of Plaintiff's copying theory.

*v. Plaintiff's Lanham Act Claim Independently Requires Financial Discovery*

Financial and point-of-sale data are also relevant to test Plaintiff's allegations regarding the marketplace presence of its products and to allow Defendants to present defenses concerning the scope of commerce, market impact, and consumer perception of the plush toys relevant to Count II of the Complaint. The Complaint asserts that Plaintiff's products "have gained enormous popularity" and significant recognition (secondary meaning) in the marketplace. *See* Compl. ¶¶42 and 60. Sales and distribution records are necessary to evaluate those assertions and determine the actual scope of Plaintiff's commercial presence.

Additionally, financial data is also necessary to test Plaintiff's allegation at paragraph 14 of the Amended Complaint that it spends "thousands of dollars" annually to develop and maintain goodwill and reputation. Without sales, revenue, and related financial records, Defendants cannot evaluate the scope of Plaintiff's commercial activity, the extent of the alleged goodwill, or whether Plaintiff's claimed reputation and market presence are consistent with the economic realities of its business.

More importantly, Plaintiff's claim under Section 43(a), 17 U.S.C. §1125(a) of the Lanham Act for false designation of origin does **not** provide for statutory damages. 17 U.S.C. §1117 itself outlines the remedies for violations under Section 43(a), which include recovery of the defendant's profits, any damages sustained by the plaintiff, and the costs of the action, subject to the principles of equity. Statutory damages are not mentioned as an available remedy under this provision for

Section 43(a) claims. Consequently, Plaintiff cannot maintain its Lanham Act claim while simultaneously refusing to produce discovery necessary to evaluate the damages it seeks.

Therefore, Plaintiff's attempt to avoid producing financial discovery by invoking a potential future election of statutory damages therefore finds **no** support in the law and is inconsistent with both the allegations in the Complaint and the governing discovery standards under Rule 26.

**B. The Requested Discovery Is Relevant to Liability and Defendants' Defenses**

Plaintiff's responses confirm that it has not produced the core categories of documents Defendants requested and that the Court ordered Plaintiff to produce. With respect to the design and manufacturing history of the plush toys—specifically **Requests Nos. 7, 18, and 19** in the Rule 30(b)(6) Notice (Exhibit B to Defendants' Motion to Compel, Dkt. 74-3)—Plaintiff asserts that although prototypes "might be relevant," Wild Encantos does not possess them and further contends that the identity of the manufacturer is not relevant. Plaintiff has therefore produced no sketches, drafts, prototypes, manufacturer documents, or communications reflecting the development, revision, or approval of the plush toy designs object to the complaint. *See* **Exhibit C.**

Plaintiff states that the original coquí design was created by an individual identified as Michael Tain and that the designs predate Plaintiff's acquisition of intellectual property through the execution sale involving Coquico. *See* **Exhibit A**. But as explained in **Dkt. 74** the plush toys currently sold by Plaintiff—and that form the basis of the claims in this case—are **_not_** the same products allegedly created by that designer or involved in the earlier Coquico litigation. *See* **Dkt. 74-7** (Coquico litigation coquí) and **Dkt. 42** at 3. The plush toys now sold by Plaintiff _differ_ from earlier versions in size, color, stitching, and pose, among other things. Defendants are therefore entitled to discovery showing how and why those variations were created, who participated in

developing or approving them, and what modifications were made to earlier designs to determine whether the current products constitute derivative works.

As explained in **Dkt. 74,** this makes the design and manufacturing history of the current products *critical* to determining the originality and scope of the asserted copyrights, whether those products constitute derivative works, and whether the chain of title Plaintiff relies upon actually extends to the designs now asserted in this litigation.

Plaintiff has offered <u>no meaningful explanation</u> for the absence of these materials which relate to the coqui and parrot plush toys plaintiff sales.  That omission is particularly striking given Plaintiff's own allegations that it has "created", "manufactures", and sells the plush toys at issue and controls their production and commercialization. *See* Amd. Complaint **Dkt. 42 ¶¶**22, 23 and 34. As the owner and distributor of the products it claims were infringed, Plaintiff should reasonably possess—or have access to—documents reflecting the development of the products it currently sales, including prototypes, design revisions, and communications with manufacturers involving those revisions.  Plaintiff has produced ZERO.

In short, Plaintiff cannot rely on alleged ownership of earlier designs to assert infringement while withholding the development history of the different plush toy designs it currently sells and claims were infringed in this action.

**WHEREFORE,** Defendants respectfully request that the Court to:

a) **DENY** Plaintiff's *Motion Waiving Actual Damages* (**Dkt. 78**);

b) **ORDER** Plaintiff to comply fully with the Court's discovery Order **(Dkt. 75)** and produce complete responses and documents responsive to: Requests Nos. **7, 18, and 19** (design and manufacturing history); and Requests Nos. **11, 12, 15, and 20** (sales, revenue, and financial data);

c) **GRANT the sanctions previously requested in Defendants' Motion to Compel (Dkt. 74)**, at the very least reasonable attorneys' fees and costs incurred in connection with Defendants' efforts to obtain compliance with the Court's discovery Order; and

d) Grant such other relief as the Court deems just and proper.

**CERTIFICATION:** An electronic copy of the foregoing motion was filed with the Clerk of the Court using the CM/ECF system which will send notification of this filing to opposing counsel of record.

### ADSUAR
Counsel for Defendants
P.O. Box 70294
San Juan, PR 00936-8294
Tel.: 787.756.9000/Fax: 787.756.9010


*/s/ Luis Pérez-Giusti*
LUIS PEREZ-GIUSTI
USDC-PR 208608
lpg@amgprlaw.com


*/s/ Alexandra Casellas Cabrera*
ALEXANDRA CASELLAS CABRERA
USDC-PR 301010
acasellas@amgprlaw.com
