**Elsie García**

| | |
|---|---|
| **From:** | Alexandra Casellas-Cabrera |
| **Sent:** | Wednesday, March 11, 2026 1:28 PM |
| **To:** | Elsie García |
| **Subject:** | FW: Compliance with Motion to Compel |
| **Attachments:** | Verdict Form.pdf; Report on sale of property coquico.pdf; Order Dismissing Bankruptcy.pdf; First Circuit Order on Substituion of Party.pdf; Certificate of Recordation of copyrights in the name of Angel Rodriguez Miranda.pdf; Registration of Tata by Coquico, Inc..pdf; Coqui Comun.pdf; Request a Copy Estimate _ U.S Coqui Comun.pdf; Request a Copy Estimate _ U.S Coquico Tata.pdf; Receipt from Allways 99.jpg |

Alexandra Casellas-Cabrera
Special Counsel



208 Ponce de León Ave.
Suite 1600
San Juan, P.R. 00918



acasellas@amgprlaw.com
adsuarlaw.com
787.281.1816

**From:** Jane Becker Whitaker <jbw@beckervissepo.com>
**Sent:** Tuesday, March 3, 2026 5:28 PM
**To:** Alexandra Casellas-Cabrera <acasellas@amgprlaw.com>; Luis R.Pérez Giusti <lpg@amgprlaw.com>
**Subject:** Compliance with Motion to Compel

| | |
|---|---|
| Caution! This message was sent from outside your organization. | Block sender \| Report |

Good afternoon, Alexandra and Luis,

I tried calling and texting Alexandra shortly after receiving the Court's order because the Court ordered a response to Exhibit B, which does not contain specific requests. It is my understanding that the reference meant was to Exhibit A. That is the document Plaintiff used to provide supplemental answers. If you have a different interpretation of the order, please let me know.

Our client is reviewing the final draft of the supplemental answers now. I attach to this email the documents which reflect the chain of title that is explained in the Supplement. I also attach the registrations from the U.S. Copyright Office; an expedited request to the U.S. Copyright for each of the files brought up to date; as well as a receipt from Allways 99 referenced in those supplemented answers.

Once I have the signed Supplemental Answers, I will send them to you.

Sincerely yours,

Jane Becker Whitaker



PO Box 9023914

San Juan, PR 00902-3914
Cel: (787) 585-3824
Office (787) 945-2406
E-mail: jbw@beckervissepo.com
Web: beckervissepo.com

WARNING: This message is intended only for the use of the addressee and may contain information which is privileged, proprietary in nature, or otherwise protected by law from disclosure. If you are not the addressee, you are notified that reading, copying or distributing this message is prohibited.

Docusign Envelope ID: B4FCE161-AF65-8E04-8372-D3ED7C3049D3

UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

| | |
|---|---|
| WE, LLC d/b/a WILD ENCANTOS., | |
| Plaintiff, | Civil No. 3:24-cv-01185 (CVR) |
| v. | |
| CARIBBEAN RETAIL VENTURES, INC., SALVADOR ABADI, Jane Doe, and their conjugal partnership; JOEL BENDER, Susan Roe, and their conjugal partnership | Re: Copyright Infringement |
| Defendants. | |

SUPPLEMENTAL ANSWER TO FIRST SET
OF INTERROGATORIES AND
REQUEST FOR PRODUCTION OF DOCUMENTS TO PLAINTIFFINTERROGATORIES

1. **Answered**

2. **Answered.**

3. Describe the circumstances surrounding the origination, selection and/or adoption of the "Plush Toy Coqui" and "Plush Toy Parrot", including but not limited to, a) the date of origination, b) the derivation of the design, the meaning or suggestive connotation of the design, if any, c) the identity of the person(s) who participated in the origination, selection and/or adoption of the designs; d) the persons who would have knowledge of matters involving the creation, design, or development of the "Plush Toy Coqui" and "Plush Toy Parrot".

   **b) I now know that there was a darker version of the coqui sold at some point, but I do not know how that came about. The meaning and suggestive connotation of the design of both products is the visual and audio memory is nostalgia for Puerto Rico, even for those who live here. As for (c), I do not know who designed the darker**

1

**version of the coqui. As for the different sizes and poses of the coqui, including the backpack and the coqui with the suction cups on its little feet, I designed those derivative works.**

4. Identify and describe in detail the chain of title for the copyright(s) at issue in this case, including but not limited to the original author or creator, all prior owners, and any transfers, assignments, or other conveyances of rights. Your response must include:

    a. The name and contact information of each individual or entity that previously owned or held rights to the copyright(s), including Mr. Rodríguez Miranda and any other prior owners.

    b. The date and manner (e.g., written assignment, contract, will, or other legal instrument) of each transfer of ownership or rights, including the transfer from the original author to Mr. Rodriguez Miranda in 2014 and from Mr. Rodriguez Miranda to Plaintiff WE in 2017.

    c. A description of the rights conveyed in each transfer, including whether the transfer was partial or complete, and any limitations or conditions imposed.

    d. The identity of all individuals involved in negotiating or executing the transfers.

    e. The existence of any documents, agreements, or communications evidencing the transfers, and whether such documents have been recorded with the U.S. Copyright Office

**After leaving a job in Philadelphia, I went into business with Malik Benin to have plush toys of emblematic animals from Puerto Rico manufactured and imported to Puerto Rico through Coquico, Inc. I lent money to the company and I worked merchandising the coqui, the Puerto Rican parrot, and an unsuccessful vejigante bear throughout the Island of Puerto Rico. As the products began to sell and the business became successful, Mr. Benin refused to pay my**

commission or my salary or have the company repay the loan. We parted ways, and I began bringing the products into Puerto Rico through a different company. Coquico sued me and my company for copyright infringement and eventually achieved a judgment for $15,000, which I have paid. I sued Coquico for the loan, salary and commissions and received a judgment for $348,821.23. I obtained a writ of attachment on the Coquico intellectual property. Before the sale, Coquico filed for bankruptcy in Philadelphia. The bankruptcy court dismissed the bankruptcy as fraudulent. I learned in the hearing on the motion for dismissal that Coquico had transferred its intellectual property to Acquanetta Benin, Mr. Benin's mother and a company called 18 Degrees North, Inc. I moved to add those two parties to the collection. Judge Fusté granted that motion. The Benins and the corporation appealed. The First Circuit affirmed. I was finally able to executed on the writ of attachment for part of the judgment. The majority of the judgment remains unexecuted to this day. The transfer documents from the execution were submitted to the Copyright Office, and I obtained the attached notice from the Copyright Office in the summer of 2017. After the effects of Hurricane Maria subsided, I organized WE, LLC and transferred the copyrights to the LLC.

As can be imagined, I have no communication with Malik Benin, his relatives, or his companies. I have submitted an expedited request for the deposit copies that the U.S. Copyright Office may have.

As for the specific questions:

(a) I do not have Malik Benin's contact information, nor that of his mother or his corporations.

(b) I attach the documents.

(c) Please see the documents

(d) There was no negotiation. The only person other than myself were the marshal at the

**attachment sale and the judges who presided over the hearings as to the bankruptcy fraud and as to the substitution of parties for collection.**

**(e) See the above explanation**

5. Identify each "Plush Toy Parrot" product, including variations or modifications of earlier products, that is the subject of Plaintiff's copyright claim in the *Complaint*, including each products':

    a.  name;

    b.  model number;

    c.  date of publication;

    d.  U.S. Copyright Registration Number and date of registration or, if not registered, date that any application and accompanying fee and depository materials for the product was received by the Copyright Office.

**Answered previously**

6. Identify each "Plush Toy Coqui" product, including variations or modifications of earlier products, that is the subject of Plaintiff's copyright claim in the Amended Complaint, including each products':

    a.  name;

    b.  model number;

    c.  date of publication;

    d.  U.S. Copyright Registration Number and date of registration or, if not registered, date that any application and accompanying fee and depository materials for the product was received by the Copyright Office.

**Answered previously**

7. Identify and describe all elements of the "Plush Toy Coqui" and "Plush Toy Parrot" that

Plaintiff claims are original and protected under copyright, including any creative choices that distinguish them from standard or commonly used plush toy designs.

**Answered previously**

8. Identify and describe all elements of the "Plush Toy Coqui" and "Plush Toy Parrot" that are similar to *Defendant's Toy Parrot Design* and *Defendant's Toy Coqui Design*.

**Answered previously**

9. Identify all specific elements of the "Plush Toy Coqui" and "Plush Toy Parrot" that Plaintiff claims constitute protectable trade dress. Specify which elements, if any, are non-functional.

**Answered previously**

10. Identify all facts that support or tend to support Plaintiff's claims, as alleged in Count II of the Complaint, that Defendants have violated the Lanham Act, (15 U.S.C. § 1125(a) including, but not limited to identifying:

   a. Each of Defendant's product, by name and model number, that allegedly violates Plaintiffs rights under the Lanham Act;

   **The products do not appear to have either names or model numbers, but the products that violate the Lanham Act are the coqui and the two sizes of the Puerto Rican parrot.**

   b. How Defendant's products have caused or are likely to cause confusion among the general purchasing public;

   **They are sold in the Allways99 stores and they are substantially similar to the WE, LLC copyrighted plush toys.**

   c. How Defendants have allegedly misrepresented and falsely described to the general public the origin and source of *Defendants' Plush Toy Designs*;

5

**By having substantially similar plush toys sold in their retail stores.**

d. How Defendants have allegedly created a likelihood of confusion for ultimate purchasers as to both the source and sponsorship of such merchandise; and

**The following people notified Mr. Rodriguez that they saw these substantially similar plush toys in the Allway99 stores:**

- **Carlos Padilla**
- **Juan Carlos Rodríguez**
- **Ignacio Padilla**
- **Obet Rojas**
- **Grisel Rivera Chávez**
- **Maribel Marrero**
- **Angie Sánchez**

e. How Defendants have falsely designated the origin of *Defendants' Plush Toy Designs*, and ;

**Through the very similarity**

f. Identify all Documents that support or tend to support such facts and the person(s) most knowledgeable about the facts and/or Documents that are the subject matter of this Interrogatory.

**The following people saw the Allways 99 plush toys and thought they belonged to Wild Encantos: Carlos Padilla, Juan Carlos Rodriguez, Ignacio Padilla, Obet Rojas, Grisel Rivera Chavez, Maribel Marrero, and Angie Sanchez. All of them communicated their confusion over the product to Angel Rodriguez Miranda.**

11. State whether Plaintiff or any previous owner has ever applied for or obtained trade dress

6

registration for the "Plush Toy Coqui" or "Plush Toy Parrot." If so, identify the registration number(s) and date(s) of registration.

**Already answered**

12. State whether WE has lost sales as a result of the sales of *Defendant's Plush Toy Designs*; and the amount of WE's lost sales (consider the period of January 2020 to May 2024) and how such amounts were calculated.  In your response, please specify the time period in which you claim to have experienced lost sales or reduced revenue due to Defendants' alleged infringement.

**Wild Encantos did not experience a loss of sales during the relevant period. The possible lack of  causal nexus between Defendants' infringement and Plaintiff's sales does not warrant an award of actual damages because there are multiple other factors: the pandemic, the economic recovery during 2022-24 and the resulting consumer confidence. These outside factors are the very reasons that Congress affords two methods for calculating damages in copyright infringement cases: the actual damages, consisting of the harm to Plaintiff plus the gain to Defendant or statutory damages, the latter because there is need for an infringing Defendants to feel the "sting" of a somewhat punitive fine to dissuade them from infringing in the future.**

13. Identify the date when WE first sold or offered to sell, in Puerto Rico, "Plush Toy Coqui" and "Plush Toy Parrot". If in different dates, please clarify accordingly. Produce any document in support of your response.

**2000, see the copyright registrations. The date applies to both products**

14. If the "Plush Toy Coqui" or "Plush Toy Parrot" were sold by any other person or entity before WE began selling them, identify all such persons or entities and explain the circumstances surrounding those sales, including the dates, locations of those sales. Produce

any documents supporting your response.

**I know that Coquico sold the plush toys at the National Parks in Puerto Rico and in many souvenir stores. As you can gather from the history set forth above, I do not have communication with anyone from Coquico, Inc. to provide additional information.**

15. Identify the locations in Puerto Rico where the "Plush Toy Coqui" and "Plush Toy Parrot" was sold during the period from 2020 to 2024. Specify the address of the locations and produce all documents in support of your response.

**The locations have varied over the years. In the relevant time periods, Wild Encantos has consistently sold in Walgreens located in tourist areas and at the Convenience Store at the SJU airport.**

16. Identify each person, entity or commercial and/or retail outlet who distributed the "Plush Toy Coqui" and "Plush Toy Parrot" in Puerto Rico at any time during the period from 2020 to 2024, and specify whether any contract existed for the distribution or sale of these products. Produce any document in support of your response.

**I usually pick up the plush toys and take them to the warehouse at my father's house, although on occasion I pay someone to do so. The merchandiser picks up the plush toys and delivers them to the retails store. I have also on occasion had someone working to mail the plush toys purchased on line.**

17. Identify all instances of actual confusion or likelihood of confusion in connection with the source, origin or affiliation of the "Plush Toy Coqui"/"Plush Toy Parrot" and *Defendants' Plush Toy Designs* with each such event; and a full description of what was said and whether the statement was voluntarily made or in response to a statement or inquiry by Plaintiff; and identify all Documents that support or tend to support such instances of actual or likely

8

confusion and the person(s) most knowledgeable about the facts.

**See Answer 10.**

18. Describe in detail any efforts undertaken by Plaintiff to promote or advertise the "Plush Toy Coqui" and "Plush Toy Parrot", including the duration, geographic scope, and nature of such efforts. Include in your response the types of media in which WE has advertised the "Plush Toy Coqui" and "Plush Toy Parrot" at any time from January 2020 to May 2024.

**Answered previously.**

19. Identify the target consumer of the "Plush Toy Coqui" and "Plush Toy Parrot", including, without limitation, the age, gender, and social group of the customers to whom the toys are directed.

**Answered previously.**

20. State whether WE conducted, commissioned, or reviewed any consumer surveys, market research studies, or industry reports measuring public recognition, brand association, or consumer demand for its "Plush Toy Coqui" and "Plush Toy Parrot" designs? If so, provide details on:

    a. The date and scope of each survey or study;

    b. The methodology used, including sample size and target demographics;

    c. The key findings, particularly regarding consumer awareness, purchase intent, and brand loyalty;

    d. Whether the results have been published, cited, or used in marketing or legal proceedings; and

    e. Any third parties, agencies, or experts involved in conducting or analyzing the data.

**Answered previously.**

9

21. State whether WE has identified or collected any media coverage, social media posts, or public discussions that highlight the popularity, consumer interest, or cultural significance of its "Plush Toy Coqui" and "Plush Toy Parrot" designs? If so, provide details on:

a. Any newspaper, magazine, or online articles featuring the plush toys, including publication names, dates, and key excerpts.

b. Television or radio segments discussing the toys, including network names, air dates, and transcripts if available.

c. Any awards, recognitions, or endorsements the plush toys have received from media outlets, industry groups, or public figures.

**Frontier Airlines named the Coqui Comun the souvenir of the year and gifted one to each passenger on a flight from Aguadilla. I do not recall the date.**

d. Notable posts, hashtags, or trends related to the plush toys on platforms such as Instagram, Facebook, TikTok, or X (Twitter).

e. Engagement metrics (likes, shares, comments) on WE's official posts promoting the plush toys.

f. Any viral moments, user-generated content, or influencer endorsements involving the plush toys.

g. Mentions of the plush toys in tourism, educational, or cultural initiatives in Puerto Rico or beyond.

h. Any partnerships with organizations, museums, or government entities that showcase or distribute the plush toys.

**As noted above, the National Park Service used to sell the plush toys. Before Hurricane Maria hit the Island, El Portal in El Yunque bought 400 Cotorras for an event at the aviary that was to open in 2017.**

i. Consumer testimonials, online reviews, or forum discussions that demonstrate recognition and demand for the products.

22. Identify the retail price (or price range, if applicable) of the "Plush Toy Coqui" and "Plush Toy Parrot" in Puerto Rico from January 2022 until May 2025. Produce all documents in support of your response, including, without limitation, price lists adopted and/or approved by WE.

**Wild Encantos does not suggest a retail price. Each retailor sells at the price it believes is in its best interest. Wild Encantos' pricing did not change between 2020 and 2024.**

23. State whether Plaintiff is aware of any third parties—other than Defendant—offering for sale plush toys that incorporate elements similar to those in Plaintiff's claimed trade dress. If so, identify such third parties and explain any actions taken by Plaintiff regarding their products.

**WE sued M.R.J. Distributors, Inc., Wal-mart Puerto Rico, Inc. and Supermax. 24-1584 (ADC)**

24. Identify all facts, documents, legal authority, or other information that WE relies on to support the contention that Defendants have manufactured, imported, distributed, sold, or offered for sale unauthorized or counterfeit plush toy designs that infringe WE's copyrighted designs. (ECF No. 42). Identify each person with knowledge of the facts supporting such contention.

**Until Defendants agreed to withdraw the infringing products from their stores, they had those products manufactured; they imported them; they distributed them to their stores, where they sold those products or offered them for sale.**

25. Identify all facts, documents, legal authority, or other information that WE relies on to support the contention that Defendants' alleged infringement has caused economic harm

11

including dilution of brand reputation (ECF No.42). Identify each person with knowledge of the facts supporting such contention.

**Answered previously.**

26. Describe how Plaintiff calculates its alleged damages, including the methodology, assumptions, and any experts relied upon for such calculations.

**Answered previously.**

27. Identify all customers, retailers, or distributors who allegedly stopped or reduced purchasing Plaintiff's "Plush Toy Coqui" and/or "Plush Toy Parrot" due to Defendant's alleged infringement.

**Answered previously.**

28. Identify all facts, documents, legal authority, or other information that WE rely on to support the contention that Defendants acted wilfully and with knowledge of WE's copyrights in manufacturing, distributing, and selling the allegedly infringing plush toy designs. (ECF No. 42). Identify each person with knowledge of the facts supporting such contention.

**Answered previously.**

29. State whether Plaintiff has ever licensed, assigned, or otherwise authorized any third party to produce, distribute, or modify the "Plush Toy Coqui" and "Plush Toy Parrot." If so, identify all such entities and describe the terms of the agreement.

**Answered previously.**

30. Identify all facts, documents, legal authority, or other information that WE rely on to support its contention that Defendant had access to its plush toy designs before Defendant

created its own plush toys. If so, explain the basis of this contention, including how, when, and where Defendants allegedly obtained access.

**Answered previously.**

## I. REQUEST FOR PRODUCTION OF DOCUMENTS

1. Identify and provide copy of each and every document identified or mentioned in your answers to the preceding interrogatories.

2. Provide copy of all documents evidencing the creation, design, or development of the "Plush Toy Coqui" and "Plush Toy Parrot," including but not limited to sketches, prototypes, blueprints, design drafts, and communications with third parties regarding the design process.

   **As the copyright registration states, Michael Tain designed the coqui. Wild Encantos does not possess the documents identified in this interrogatory.**

3. Provide copy of all documents concerning the identity of the designer of the "Plush Toy Coqui" and "Plush Toy Parrot", including but not limited to documents sufficient to identify that designer, and any agreements you have with such designer.

   **Please see the copyright registration. I never had contact with Mr. Tain.**

4. Identify and provide copy of all statements, notes, memoranda or writings of any kind obtained from any person which in any way relate to WE's allegations in the Amended Complaint.

   **No such writings except drafts of the complaint, motion for the TRO and the preliminary injunction.**

5. Identify and provide all correspondence, including electronic correspondence, exchanged between WE and any person or entity regarding the facts alleged in the Amended Complaint.

13

**The only such communications aside from those mentioned in the previous answer were the photos that appear in the Complaint and the Amended Complaint as well as the attached receipt.**

6. Produce copy of the entire file for copyright registration of the "Plush Toy Coqui", including but not limited to

    a.    Certificate of registration.

    b.    All applications for copyright, revisions, amendments, and enclosures or attachments to applications, including but not limited to photographs, drawings, deposit copies, or the like;

    c.    All correspondence concerning all applications for such item, including rejections, questions, explanations, or any information relating to the application.

    d.    All correspondence or communications with authors or designers of this product, or any similar products;

    e.    Assignments or requests for assignments of rights to copyright protection for such item.

    **I have produced everything I have. I have requested the file from the U.S. Copyright Office as well.**

7. Produce copy of the entire file for copyright registration of the "Plush Toy Parrot", including but not limited to:

    a.    Certificate of registration.

    b.    All applications for copyright, revisions, amendments, and enclosures or attachments to applications, including but not limited to photographs, drawings, deposit copies, or the like;

    c.    All correspondence concerning all applications for such item, including rejections,

14

questions, explanations, or any information relating to the application.

    d.     All correspondence or communications with authors or designers of this product, or any similar products;

    e.     Assignments or requests for assignments of rights to copyright protection for such item

    **I have produced everything I have. I have requested the file from the U.S. Copyright Office as well.**

8. Identify and provide copy of all documentation required under Fed. R. Civ. P. 26 for each and every expert witness you intend to present at trial.

    **Answered previously.**

9. Identify and provide copy of all documents prepared by an expert(s) which refer or relate to the allegations in the Amended Complaint ,including documents relied upon by the expert for his/her opinion.

    **Answered previously.**

10. Produce all documents related to the purported Transfer of Copyright Agreement, including but not limited to:

    a.     The original agreement, any drafts, amendments, or modifications.

    b.     Communications (emails, letters, messages) between the plaintiff and any third party discussing the transfer, its necessity, or execution.

    c.     Documents evidencing when and how the agreement was negotiated, drafted, or executed.

    d.     Metadata or any records indicating the date of creation and modification of the agreement.

    **Attached.**

11. Produce all documents including but not limited to correspondence, emails, internal memoranda, or reports, that reflect the date and circumstances under which Plaintiff first became aware of *Defendants' Plush Toy Design*, which are the subject of this lawsuit.

    **See attached Sales Receipt.**

12. Any documents that reflect the sales of the "Plush Toy Coqui" and "Plush Toy Parrot" by Plaintiff, including invoices, sales receipts, contracts, or any documentation reflecting transactions with retailers, distributors, or consumers

    **These documents are not relevant to statutory damages in the copyright case.**

13. All documents relating to Plaintiff's claimed trade dress for the "Plush Toy Coqui" and "Plush Toy Parrot," including any documents that describe, define, or delineate the elements Plaintiff claims to be protectable as trade dress.

    **There are no documents. The trade dress is reflected in the plush toys themselves.**

    **The trade dress of a product "involves the total image of a product and may include features such as size, shape, color or color combinations, texture, [or] graphics"** *John H. Harland Co. v. Clarke Checks, Inc.,* **711 F.2d 966, 980 (11th Cir. 1983). Here, the coquis are the same size as are the smaller parrots, the colors of all products are virtually identical as are the color combinations. The texture is that of a plush toy, not of an amphibian in the case of the coquis or a bird in the case of the parrots. The trade dress is both inherently distinctive and nonfunctional.**

    **There have not been studies conducted of these plush toys. This is a niche business that I created. Various businesses have decided to piggyback on the market I created. It is my understanding that intellectual property laws prohibit such conduct.**

14. All documents related to Plaintiff's marketing strategy for the "Plush Toy Coqui" and

"Plush Toy Parrot," including but not limited to marketing plans, budgets, communications with marketing or advertising firms, and any documents discussing the trade dress of the products from 2019 to May 2024.

**The marketing strategy is that of a small business. WE, LLC does not have a marketing firm or a separate budget for marketing.**

15. Produce copies of promotional, or advertising materials used by Plaintiff in connection with the "Plush Toy Coqui" and "Plush Toy Parrot" from 2019 to May 2024, including catalogs, online advertisements, print advertisements, social media posts, or any other promotional content.

**The website is [www.wildencantos.com](www.wildencantos.com) and there is a Facebook page as well. The plush toys are sold from displays that serve as a means of marketing as well.**

16. Produce surveys, studies, or reports (including consumer surveys) conducted or commissioned by Plaintiff to determine whether the trade dress of the "Plush Toy Coqui" and "Plush Toy Parrot" has acquired secondary meaning or is recognized by consumers as originating from Plaintiff.

**Answered previously.**

17. Produce documents related to Plaintiff's enforcement of its trade dress rights, including any cease-and-desist letters, legal actions, or complaints made by Plaintiff regarding alleged infringement of its trade dress by third parties.

**24-1584 (ADC) had a trade dress claim that was dismissed.**

18. Produce any documents reflecting instances of alleged consumer confusion between the Plaintiff's products and Defendant's products, including customer complaints, surveys, or other evidence.

**No written documents.**

19. Produce all documents reflecting Plaintiff's claim of lost sales, including sales records, customer communications, and any documents showing a decrease in sales or market share due to the alleged infringement by Defendant.

20. Produce all documents related to any economic damages calculations or expert reports Plaintiff intends to rely upon to support its claim for lost profits or other damages arising from the alleged infringement.

**The economic damages calculation for the trade dress will consist of the documents Caribbean Retail Ventures has produced of its income from the products identified in the Amended complaint.**

21. Produce all communications or documents that show Plaintiff's attempts to mitigate its claimed damages, including actions taken to recover lost sales or prevent further infringement by Defendant.

**Plaintiff sought and obtained a stop to the infringement by filing suit.**

22. Produce documents related to Plaintiff's revenue, sales, and profits from the "Plush Toy Coqui" and "Plush Toy Parrot" from 2019-2024.

**Plaintiff is not seeking actual damages.**

23. Produce all documents concerning Plaintiff's production of the "Plush Toy Coqui" and the "Plush Toy Parrot" from 2019-2024.

**Plaintiff does not "produce" its products; it imports them.**

24. Produce all financial records, reports, invoices, sales summaries, or other documents sufficient to show the gross and net profits from sales of the "Plush Toy Coqui" and "Plush Toy Parrot" by or on behalf of Plaintiff. This request includes, but is not limited to, documents reflecting the quantity sold, unit price, cost per unit, and the date of each sale.

The time period for this request is limited to 2019-2024.

**Plaintiff is not seeking actual damages. It's trademark claim for damages is limited to CRV's revenues.**

25. Produce all documents evidencing annual expenses in advertisement and marketing, promotion for the "Plush Toy Coqui" and "Push Toy Parrot" since 2019 to May 2024.

**See Answer 15. The Facebook page costs nothing, the website costs ???; and the displays costs approximately $300 each.**

26. Produce all documents prepared or caused to be prepared by Plaintiff which depict or display the design for the "Plush Toy Coqui" in whole or in part, including without limitation artwork underlying such products.

**The design for the plush toy coqui occurred before I obtained the intellectual property.**

27. Produce all documents prepared or caused to be prepared by Plaintiff which depict or display the design for the "Plush Toy Parrot" in whole or in part, including without limitation artwork underlying such products.

**The design for the "Plush Toy Parrot" occurred before I acquired the intellectual property.**

28. Produce all documents concerning Plaintiff's distributors of the "Plush Toy Coqui" and the "Plush Toy Parrot" from from 2019-2024, including, but not limited to, the identity of each manufacturer.

**I distribute the products .**

19

Docusign Envelope ID: B4FCE161-AF65-8E04-8372-D3ED7C3049D3

29. Produce documents sufficient to identify all Officers and Directors of Plaintiff from July 17, 2017, to the present.

**Answered previously**

30. Produce all documents and things furnished or supplied to each of Plaintiff's experts in connection with this litigation, including the identity of each document and thing by Bates number.

**There is no expert witness.**

31. Identify and provide copy of each and every document, tangible things and/or real and demonstrative evidence that you intend to use in the trial for this case.

**Answered previously**

32. Identify and provide copy of each and every document, tangible things and/or real and demonstrative evidence related to WE''s allegations in the Amended Complaint, even if you do not intend to use these documents at trial.

**Answered previously.**

I have read the information contained in this answer, and I state that it is true and correct under penalty of perjury

Signed by:

*ANGEL Rodriguez Miranda*

A2B3EC9DE7744EE...

Angel Rodriguez Miranda

In San Juan, Puerto Rico, this 3rd day of March 2026.

20