| | |
|---|---|
| WE, LLC d/b/a WILD ENCANTOS., <br><br> Plaintiff, <br><br> v. <br><br> CARIBBEAN RETAIL VENTURES, INC., SALOMON ABADI, Jane Doe, and their conjugal partnership; JOEL BENDER, Susan Roe, and their conjugal partnership <br><br> Defendants. | Civil No. 3:24-cv-01185 (CVR) <br><br> Re: Copyright Infringement |

### REPLY TO OPPOSITION TO MOTION TO WAIVE ACTUAL DAMAGES

**TO THE HONORABLE COURT:**

**COMES NOW** Plaintiff, WE, LLC, through undersigned counsel, and very respectfully state and pray:

**BACKGROUND INFORMATION**

The copyright law provides Plaintiff the opportunity to decide whether to be compensated through actual damages and statutory damages in recognition of the reality that frequently actual damages may *de minimis* and therefore insufficient to dissuade infringers from continuing to infringe. As this case has progressed, Wild Encantos has concluded that Defendants herein are the quintessential candidates for statutory damages. Defendants have thwarted our efforts to obtain independent confirmation of the number of infringing products they have imported by refusing to consent to U.S. Customs producing that information. Defendants aver that they did not have product by product point of sales information for much of the period of infringement.

Plaintiff concedes that it cannot identify lost sales because Defendants' infringement occurred right after the end of the pandemic, as the economy recovered from its virtual standstill in 2020-21. Since Plaintiff does not seek actual damages from Defendants, the information Defendants seek: the sales receipts, revenue, and financial data is not relevant.

As for "design, creation, and manufacturing *history*"[1], by coincidence, the U.S Copyright Office sent the below communication today:

**From:** CopyCerts <copycerts@copyright.gov>
**Sent:** Friday, March 20, 2026 9:39 AM
**To:** Jane Becker Whitaker <jbw@beckervissepo.com>
**Subject:** RE: Copy Estimate Request from jbw@beckervissepo

Good Day,

**Thank you for your patience.**

Thank you for contacting Records Research and Certification Division.

Unfortunately, the work in your inquiry (**VA0001075653 / 2001-06-22**) is out of our retention period and is no longer a part of the Copyright Office collection. Therefore, it is not available for reproduction. Copyright's retention period is 20 years, after that period the deposit no longer exists at our off-sight facility storage.

Please note that **Section 704, D of the Copyright Law** (paraphrased) states that deposits not selected by the Library, or identifying portions or reproductions of them, shall be retained under the control of the Copyright Office, including retention in Government storage facilities, for the longest period considered practicable and desirable by the Register of Copyrights and the Librarian of Congress. After that period it is within the joint discretion of the Register and the Librarian to order their destruction or other disposition.

*Pria Parker*
**Customer Service Representative**
*Records Research and Certification Division*
Office of Copyright Records
U.S. Copyright Office
101 Independence Avenue, SE
Washington, DC 20559-6000

---

[1] Defendants' opposition, Docket 80 at 3.

Wild Encantos sent requests for each of the copyright registrations relevant to this case on February 24, 2026. This is the first response we have had. Wild Encantos' principal has provided a detailed explanation as to why he cannot seek the prototypes from his former partner. He does not possess them. Plaintiff cannot produce what he does not have have and cannot get.

## II. WITH PLAINTIFF NO LONGER SEEKING ACTUAL DAMAGES, THE FINANCIAL INFORMATION REQUESTED IS NOT RELEVANT.

Defendants cite to *Sentis Group, Inc. v. Shell Oil Co*., 763 F.3d 919 (8th Cir. 2014) for the proposition that a party cannot unilaterally declare evidence irrelevant because it does not conform to that party's theory of the case. Docket 80 at 3. The *Sentis* case's actual language is far different. In *Sentis,* the Eighth Circuit chided plaintiffs, stating: "Plaintiffs appear to suggest that concepts of materiality, relevancy, discoverability are fixed rather than fluid such that parties cannot change their views of the necessity of certain information or their theories of the case during the course of discovery as new facts and relationships are revealed or explained." *Id.* at 926. Here, with Wild Encantos learning that it could not verify the information produced by Defendants with U.S. Customs without Defendants' consent, which Defendants refused to provide, and knowing full well that it could not attribute sales losses to Defendants because there were no such losses, concluded that it preferred not to reveal all its financial information to the behemoth of Allways 99.

In fact, Wild Encantos' position fits solidly within the *Sentis* analysis. When Wild Encantos sued it had no waying of knowing the stance that Defendants would take with respect to independent corroboration of their importation figures or that Defendants

would aver that it had not installed Point of Sales machines in its stores until very recently, so that avenue for verifying sales was closed as well. Of course, Wild Encantos knew it did not lose sales during the relevant time period, but it had no way of knowing what the sales of Allways99 had been. The fluid nature of relevance enunciated in *Sentis* conforms quite nicely to the facts herein.

Defendants cite *Energy Intelligence Grp. v. Kayne Anderson Capital,* 948 F.3d 261, 275 (5th Cir. 2020) for the proposition "that the Fifth Circuit held that a copyright plaintiff's sales and revenue data remained **relevant and discoverable** even where statutory damages were available." This is an inaccurate statement of the case's holding. *Energy Intelligence* discusses whether plaintiff's failure to mitigate is a complete defense to copyright claims for statutory damages, rejecting that proposition. *Id.* at 265. In *Energy Intelligence,* plaintiff did not seek actual damages. The Court did hold that the jury could consider Energy Intelligence's lost revenue in determining what amount of statutory damages to award. *Id.* at 275. That holding does not contradict Wild Encantos' position herein. Wild Encantos stipulates that it has had zero losses. The *Energy Intelligence* court also holds that "statutory damages do not *only* approximate a copyright owner's consequential damages. Statutory damages *also* serve an independent deterrent purpose…" *Id.* [Emphasis in original]

Finally, as to discovery, *Energy Intelligence* notes that "statutory damages were adopted 'to give the owner of a copyright some recompense for injury done him, in a case where the rules of law render difficult or impossible proof of damages of discovery of profits.'" *Id.* at 273, *citing Douglas v. Cunningham,* 294 U.S. 207, 209 (1935). Here, Wild Encantos understands that it lost sales to the cheaper knockoffs sold at the 100

Allways 99 stores throughout the Island, but there is no way to prove that. And Defendants have made discovery of their sales "difficult or impossible." *Douglas* at 209.

Nor does *Bryant v. Media Right Productions, Inc.* 603 F.3d 135,144 (2d Cir. 2010)(*cert. den.* 562 U.S. 1064 (2010) support Defendants' contention that a plaintiff must turn over its financial information as to lost revenues when that plaintiff stipulates that there are none. All *Bryant* holds is that the revenue lost by the copyright holder is one of six factors a court considers when determining the amount of statutory damages. The complete list is (1) the infringer's state of mind; (2) the expenses saved, and profits earned, by the infringer; (3) the revenue lost by the copyright holder; (4) the deterrent effect on the infringer and third parties; (5) the infringer's cooperation in providing evidence concerning the value of the infringing material; and (6) the conduct and attitude of the parties. *Id. citing N.A.S. Impor. Corp. v. Chenson Enter., Inc.,* 968 F.2d 250, 252-53 (2d Cir. 1992).

Here, Wild Encantos concedes that it cannot prove that it lost revenue due to Defendants' infringements. Thus, *Curet Velazquez v. ACEMLA de Puerto Rico, Inc.,* 656 F.3d 47 (1st Cir. 2011) and the other cases from the district courts in First Circuit that hold lost revenue is relevant do not weigh in favor of granting discovery of a plaintiff's sales numbers, etc. Yes, evidence of lost revenue is relevant. None of the cases cited by Defendants support the position that a party may conduct a fishing expedition into an opposing party's financial records based on Plaintiff's concession that it lost no revenue. Defendants' position seems to be aimed at dissuading small business owners from presenting legitimate copyright claims by requiring that such entrepreneurs allow a corporation that is a goliath in Puerto Rico to rifle through their financial documents.

Defendants' new theory as to the financial records' relevance: "sales records, distribution information, and point-of-sale data are therefore necessary to test that allegation—specifically, whether Plaintiff's products were in fact being sold at the locations and during the time periods Plaintiff claims, and whether Defendants could plausibly have encountered them" is untethered in reality:



Defendants do not need Wild Encantos' financial records to know that the Wild Encantos' coquis and cotorras are sold in Walgreens. In many cases, all Defendants have

to do is walk across the street to see the displays. As for the Wild Encantos' displays at the San Juan and Aguadilla airports, the individual Defendants have both testified at their depositions that they travel by air frequently. They can deny having seen Wild Encantos' products on display there, but that is a jury question.

Indeed, Defendants' new explanation for rummaging through Wild Encantos' financial information is patently a pretext for the fishing expedition they seek. Of course, a party's false explanation for its conduct can be circumstantial evidence that the real reason is the one espoused by the opposing party. *Cf, Reeves v. Sanderson Plumbing, Inc.,* 530 U.S. 133, 147 (2000). ("Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence…, and it may be quite probative.") Defendants' claim, at this stage of the proceedings, that they need Plaintiff's financial information to determine whether Wild Encantos' products are sold at such public venues as Walgreens, the airports in Puerto Rico, and souvenir stores is simply more proof that the real reason for insisting on receiving such information is to harass Plaintiff.

Finally, as to the Lanham Act damages, Plaintiff recognizes that it can only be able to be compensated with Defendant's profits, if the jury finds liability.

## III.  WILD ENCANTOS CANNOT PRODUCE PROTOTYPES IT DOES NOT HAVE.

As Defendants have insisted on the production of the prototypes for the original coquis and cotorras, Plaintiff has repeated to Defendants time and time again that it does not have them. *See* Exhibit 1, Unsworn Declaration Under Penalty of Perjury of Angel Rodriguez Miranda, the principal of WE, LLC.  Wild Encantos has produced its products and its catalog.

Defendants claim: "Plaintiff has offered <u>no meaningful explanation</u> for the absence of these materials which relate to the coqui and parrot plush toys plaintiff sales." Plaintiff respectfully disagrees. The below is Mr. Rodriguez's description of his relationship with his former partner:

After leaving a job in Philadelphia, I went into business with Malik Benin to have plush toys of emblematic animals from Puerto Rico manufactured and imported to Puerto Rico through Coquico, Inc. I lent money to the company and I worked merchandising the coqui, the Puerto Rican parrot, and an unsuccessful vejigante bear throughout the Island of Puerto Rico. As the products began to sell and the business became successful, Mr. Benin refused to pay my commission or my salary or have the company repay the loan. We parted ways, and I began bringing the products into Puerto Rico through a different company. Coquico sued me and my company for copyright infringement and eventually achieved a judgment for $15,000, which I have paid. I sued Coquico for the loan, salary and commissions and received a judgment for $348,821.23. I obtained a writ of attachment on the Coquico intellectual property. Before the sale, Coquico filed for bankruptcy in Philadelphia. The bankruptcy court dismissed the bankruptcy as fraudulent. I learned in the hearing on the motion for dismissal that Coquico had transferred its intellectual property to Acquanetta Benin, Mr. Benin's mother and a company called 18 Degrees North, Inc. I moved to add those two parties to the collection. Judge Fusté granted that motion. The Benins and the corporation appealed. The First Circuit affirmed. I was finally able to executed on the writ of

attachment for part of the judgment. The majority of the judgment remains unexecuted to this day. The transfer documents from the execution were submitted to the Copyright Office, and I obtained the attached notice from the Copyright Office in the summer of 2017. After the effects of Hurricane Maria subsided, I organized WE, LLC and transferred the copyrights to the LLC.

As can be imagined, I have no communication with Malik Benin, his relatives, or his companies. I have submitted an expedited request for the deposit copies that the U.S. Copyright Office may have.

*See* Exhibit 2, Supplemental Answer to Discovery Requests on March 3, 2026.

Mr. Rodriguez provided that information to Defendants in his supplemental answer to their interrogatories, in compliance with this Court's order, but he had already testified about the situation at his deposition. The above is not a description of a tiff. It is the description of how Mr. Rodriguez's former business partner abused the process of this Court, the bankruptcy court in Philadelphia, and the First Circuit Court of Appeals to thwart Mr. Rodriguez's efforts to be fairly compensated.

The above description is detailed, but it is limited to the litigation. At the time the above described litigation was occurring, Mr. Rodriguez was a member of the Puerto Rico House of Representatives. Mr. Benin went to the U.S. Attorney's office, seeking criminal charges against Mr. Rodriguez for the crime of copyright infringement; he also approached the Governor's office, the President of the Puerto Rico House of Representatives, and the Puerto Rico Senate, accusing Mr. Rodriguez of criminal conduct. So no, Mr. Rodriguez cannot pick up the phone and ask Mr. Benin to send him

the prototypes, and even if he could, there is no reason to believe that Mr. Benin would have them, or, if he did have them, he would send them to Mr. Rodriguez.

**CONCLUSION**

The financial records of Wild Encantos are not relevant to statutory damages. Lost revenues are one element of how statutory damages are calculated, and Wild Encantos has decided to take them out of the equation because they do not exist.

Wild Encantos cannot produce what it does not have and cannot obtain. The original copyright owner will not provide the prototypes, and the U.S. Copyright Office does not have them.

**WHEREFORE,** Plaintiff, WE, LLC very respectfully asks this Honorable Court to sustain its determination that Plaintiff has the right to waive its claim as to actual damages in this case and to reject Defendants' demand that WE, LLC do the impossible and produce prototypes that are unobtainable.

**DATED**: March 20, 2026

Respectfully Submitted in San Juan, Puerto Rico.

**Attorney for WE, LLC**
**d/b/a "Wild Encantos";**

/S/Jane Becker Whitaker
 **JANE BECKER WHITAKER**
  USDC-PR No. 205110

VIG Tower, 1225 Ave. Ponce De León
Suite 1102
San Juan, PR 00907
Tel. (787) 585-3824 / E-mail: jbw@beckervissepo.com
janebeckerwhitaker@gmail.com

**I HEREBY CERTIFY** that I have filed this pleading with the Court's ecf system, which system will notify all counsel of record. /S/Jane Becker Whitaker.