**UNITED STATES DISTRICT COURT**
**DISTRICT OF PUERTO RICO**

| | |
|---|---|
| WE, LLC d/b/a WILD ENCANTOS., <br><br> Plaintiff, <br><br> v. <br><br> CARIBBEAN RETAIL VENTURES, INC., SALOMON ABADI, Jane Doe, and their conjugal partnership; JOEL BENDER, Susan Roe, and their conjugal partnership, <br><br> Defendants. | Civil No. 3:24-cv-01185 (CVR) <br><br><br> Re: Copyright Infringement/Lanham Act |

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**
**AND MEMORANDUM OF LAW IN SUPPORT THEREOF**

**TO THE HONORABLE COURT**

**COME HERE** Defendants Caribbean Retail Ventures, Inc., Salomon Abadi, Joel Bender and their respective conjugal partnerships (collectively "Defendants") respectfully move this Court pursuant to Federal Rule of Civil Procedure 56(a) for summary judgment dismissing, with prejudice, both counts of Plaintiff WE, LLC d/b/a Wild Encantos' ("Plaintiff" or "Wild Encantos") *Amended Complaint* (**Dkt. 40**).

### I. INTRODUCTION

This case presents issues that are ripe for summary disposition. After two full days of deposition and months of discovery, Plaintiff's corporate representative — the company's sole officer, Angel Rodríguez-Miranda — has admitted under oath facts that are independently and collectively fatal to every claim asserted. The record is complete. No disputed material fact remains.

As will be shown below, Count I, copyright infringement under 17 U.S.C. § 101 *et seq*., fails as a matter of law for at least four (4) independent reasons: (1) Plaintiff cannot produce a

1

Certificate of Registration for the specific works it alleges were infringed, which is a statutory precondition to suit; (2) the only registration, if any, it relies upon covers a different work registered by a third party; (3) Plaintiff's current plush toy is an unregistered derivative work that cannot be enforced; and (4) even if Plaintiff could reach the merits, there is no evidence of copying and no substantial similarity in any protectable element.

As for Count II, false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), the claim also fails for equally clear reasons: (1) product design trade dress requires proof of acquired secondary meaning, which is entirely absent from this record; (2) the design elements Plaintiff seeks to protect are functional and thus categorically unprotectable; (3) Plaintiff cannot establish likelihood of confusion; and (4) Plaintiff has no cognizable damages.

Accordingly, summary judgment should be granted in full.

## II. UNDISPUTED MATERIAL FACTS

The following facts are established by Plaintiff's own sworn deposition testimony and uncontroverted evidence; they are undisputed for purposes of this motion. Full citations are provided in Defendants' separately filed Statement of Uncontested Facts ("SUMF") filed on this same day.

### A. *The Parties and Products*

Plaintiff WE, LLC is a Puerto Rico limited liability company whose sole officer is Angel Rodríguez-Miranda ("Rodríguez-Miranda"). (SUMF ¶¶ 1–3.) Plaintiff sells a line of plush toys animals, among them representations of the coquí frog and the Puerto Rican parrot — two animals native to Puerto Rico — primarily through retail channels including airport stores and Walgreens. (SUMF ¶¶ 8-10, and 49)

Defendants operate the All Ways 99 chain of retail stores throughout Puerto Rico. (SUMF ¶ 4.) Defendants briefly sold plush toy coquí and parrot figures at their All Ways 99 stores but

2

voluntarily removed all such products from their stores following the filing of this lawsuit. (SUMF ¶¶ 5, 7, and 54)

Plaintiff filed Copyright and Lanham Act infringing claims over one of their coquí plush toys ("Coquí Design") and its Puerto Rican parrot plush ("Parrot Design") depicted in the Amended Complaint (Dkt. 42, at p.3, ¶ 7) (SUMF ¶8).

**Figure 1**[1]



### B.    *Copyright Registrations and Ownership*

Neither Rodríguez personally nor Wild Encantos has ever filed a copyright application with the U.S. Copyright Office for the Coquí Design or Parrot Design at issue in this litigation. (SUMF ¶12).

Plaintiff claims to have acquired the copyright over the purported plush toy designs through a post-judgment execution process in which the plush toy's original owner, Coquico's Inc's intellectual property was seized and transferred to him. (SUMF ¶16). It is also alleged that Rodríguez-Miranda later transferred the rights to WE. (SUMF ¶23).  After almost a year into

---

[1] Images provided by Plaintiff in the *Amended Complaint* (**Dkt. 42** at p. 3).

discovery, Plaintiff failed to produce any Certificate of Registration evidencing that the purported designs are in fact registered in the U.S. Copyright Office nor that Rodríguez-Miranda or Plaintiff had or have any rights over the designs. (SUMF ¶¶12-24). More importantly, Plaintiff has also failed to produce the deposit materials corresponding to the alleged registrations, making it impossible to evaluate the scope of any purported copyright protection. (SUMF ¶¶37-38).

Consistent with this lack of evidence, Plaintiff produced only a *Certificate of Recordation,* which merely reflects that certain documents were recorded with the Copyright Office, but does not evidence any registration of the works or transfer of rights. (SUMF ¶¶14-15**)**. Plaintiff alleges that its corporate representative, Rodríguez-Miranda, acquired the copyrights though a judicial sale (SUMF ¶16), but none of the materials produced include any instrument of conveyance—such as a court order confirming transfer, marshal's deed, or assignment—effectuating a transfer of copyright ownership from Coquico, Inc. to Rodríguez-Miranda. (SUMF ¶18 and ¶¶ 17-22). Absent such a writing, Plaintiff cannot establish a valid transfer under 17 U.S.C. § 204(a).

Even assuming arguendo that Rodríguez-Miranda acquired some rights over the works, Plaintiff's ownership claim fails at the next step. Rodríguez-Miranda admitted that the July 24, 2017 copyright assignment from himself to WE, LLC—the document on which Wild Encantos bases its claim of ownership (**Dkt. 42** at ¶23- Am. Compl.)—was never recorded with the United States Copyright Office. (SUMF ¶¶ 23-24 and 26).

However, Plaintiff have not provided any evidence from the U.S. Copyright Office identifying Rodríguez-Miranda, nor Plaintiff, as the author or claimant of the works in question nor there is any evidence of a recorded assignment or transfer of rights. (SUMF ¶12-13, 25-26).

C.    *Plaintiff cannot rely on the Coquico Litigation*

Plaintiff instead relies on the First Circuit's 2009 decision in *Coquico, Inc. v. Rodriguez Miranda*, 562 F.3d 62 (1st Cir. 2009), Civil No. 07-1432 ("Coquico Litigation") which analyzed

the protectable elements of the original Coquico coquí plush toy (the "Coquico Coquí"). (**Dkt. No 42**, ¶¶ 29–39- *Am. Compl.* and SUMF ¶¶ 28-29). However, Rodríguez-Miranda admitted without question that the plush toy Plaintiff currently sells — and which it asserts Defendants infringed — is **NOT the same model** that was before the First Circuit case in the *Coquico Litigation*. (SUMF ¶31). Rodríguez-Miranda further confirmed that Plaintiff's current coquí toy, the Coquí Design, differs from the original registered *Coquico Coquí* in stitching pattern, toes, dimensions, flag placement, and size. (SUMF ¶32). In fact, a side-to-side comparison of both plush toys reveals significant differences among them. (SUMF ¶32[2])

**Figure 2[3] - Coquico Coquí**






---

[2] *See* **SUMF Ex. 8** – Deposition Exhibit 3 (Coqui Design) and **Ex. 16** – Deposition Exhibit 10 (Coquico Coqui).
[3] The images in **Figure 2** depict the *Coquico Coquí* plush toy as shown and acknowledged by Plaintiff during deposition. The images are included in Defendants' Statement of Uncontested Facts as **Exhibit 16.**

**Figure 3[4]- WE Coquí Design**






Rodríguez-Miranda further admitted that the court in the *Coquico Litigation* declined to

address any controversy involving the parrot plush toy due to the complete lack of evidence of

---

[4] The images in **Figure 3** depict Plaintiff WE's Coquí Design, which is the subject of the Amended Complaint, as acknowledged by Rodriguez Miranda during deposition. The images are included in Defendants' Statement of Uncontested Facts as **Exhibit 8**.

copyright registration. Thus, the *Coquico Litigation* does not support a finding of registration of the Parrot Design. (SUMF ¶¶35-36).

### D.    *No Evidence of Copying*

Rodríguez-Miranda admitted he has no direct evidence that Defendants ever saw or had access to Wild Encantos' products. Plaintiff's access theory rests solely on speculation that, because its products were sold at the San Juan airport and certain Walgreens stores, Defendants' personnel must have encountered them. (SUMF ¶ 50). Plaintiff, however, has produced no evidence of sales at those locations, nor any evidence of sales volume that would support a reasonable inference of access. (SUMF ¶ 51).

### E.    *Substantial Similarity*

Assuming, for the sake of the argument, that Plaintiff has rights over the *Coquico Coquí,* it is beyond doubt that there is no substantial similarity between said coqui plush toy and Defendants' toy coquí.   When confronted with the allegedly registered *Coquico Coquí* and Defendants' product, Plaintiff's corporate representative admitted that the designs differed across the very elements Plaintiff claims are protectable in the *Amended Complaint,* Dkt. 42, at ¶¶ 29-36 and ¶¶ 38-39. Specifically, Plaintiff admitted that the plush toys differ in stitching patterns, toe design, flag, size and dimensions. (SUMF ¶¶46-48). *See* **Figure 2** (*Coquico Coquí*) and **Figure 4** (Defendants' Coqui Plush).

**Figure 4[5]- Defendants' Coquí Plush**

 

 

Plaintiff's testimony confirms that the alleged similarities between the toys are limited to general common features such as the presence of a Puerto Rican flag stitched into the plush toy, the use of plastic eyes, and a general color scheme of using a lighter and darker tones in different portions of the coqui toy (SUMF ¶ 34), rather than a substantially similar protectable expression.

Plaintiff cannot establish substantial similarity because the alleged similarities are limited to unprotectable elements. In fact, Plaintiff admitted that the color choices reflect the natural

[5] The images in **Figure 4** depict the Defendants' Coquí plush toys as shown and acknowledged by Plaintiffs during deposition and are included in Defendants' Statement of Uncontested Facts as **Exhibit 6.**

appearance of the animals (SUMF ¶¶ 39-41), that the Puerto Rican flag serves a functional purpose as a souvenir identifier (SUMF ¶42), and that plastic eyes are a common industry feature (SUMF ¶ 43). Once these non-protectable elements are filtered out, no protectable expression remains to support a finding of substantial similarity.

### F.    *No Evidence of Secondary Meaning or Likelihood of Confusion*

Plaintiff's entire confusion case consists of four acquaintances — personal friends and a business associate — who called Rodríguez-Miranda to ask whether the All Ways 99 products were copies of his. (SUMF ¶¶73-76) None of these individuals purchased Defendants' products believing they were Plaintiff's products. Rodríguez-Miranda has no documented instances of consumer confusion, no consumer survey, and no expert witness. (SUMF ¶¶63 and 75).

Plaintiff likewise fails to establish secondary meaning. There is no evidence of sales-driven market recognition, advertising efforts, marketing plans, or any other proof that consumers associate the alleged design features with a single source. (SUMF ¶¶63-68).

### G.    <u>*No Cognizable Damages*</u>

Plaintiff has stipulated that the company suffered no actual damages and its entire damage theory in this case rests on the Copyright Act's statutory damages provision. (SUMF ¶81) However, that theory fails as a matter of law because Plaintiff has not established that the asserted works were properly registered, as required to recover such statutory damages.

### III. LEGAL STANDARD

Summary judgment is required where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material if it has the potential of determining the outcome of the litigation." *Maymí v. P.R. Ports Auth.*,515 F.3d 20, 25 (1st Cir.2008). A genuine dispute exists only when the evidence is sufficient to permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477

9

U.S. 242, 248 (1986). Where the nonmoving party bears the burden of proof at trial, it must present affirmative evidence sufficient to establish each element of its claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Speculation and conjecture are insufficient. *Id.* The "absence of evidence on a critical issue weigh against the party who would bear the burden of proof on that issue at trial." *Alamo-Rodríguez v. Pfizer Pharma.*, 286 F.Supp.2d 144, 151 (D.P.R.2003) (citing *Pérez v. Volvo Car Corp.*, 247 F.3d at 310). Therefore, the non-moving party's failure to present evidence that establishes the essential elements of the cause of action or defenses, and for which it has the burden of proof, warrants the entry of summary judgment. *See Celotex v. Catrett*, 477 U.S. at 324.

"The object of summary judgment is 'to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required.'" *Dávila v. Corporación de Puerto Rico para la Difusión Pública*, 498 F.3d 9, 12 (1st Cir.2007) (citing *Acosta v. Ames Dep't Stores, Inc.*, 386 F.3d 5, 7 (1st Cir.2004); *Rosa v. Hospital Auxilio Mutuo de Puerto Rico, Inc.*, 620 F.Supp.2d 239 (D.P.R.2009). Where, as here, Plaintiff's own corporate representative has admitted under oath facts that negate essential elements of its claims, no genuine dispute remains and summary judgment must be granted.

## ARGUMENTS

### IV.  PLAINTIFF'S COPYRIGHT INFRINGEMENT CLAIM (COUNT I) FAILS AS A MATTER OF LAW

#### A.  <u>Plaintiff Cannot Sue for Copyright Infringement Without a Certificate of Registration — The Claim Must Be Dismissed Under 17 U.S.C. § 411(a)</u>

The Copyright Act is unambiguous: "[N]o civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title." 17 U.S.C. § 411(a). The Supreme Court unanimously resolved any doubt on this issue in *Fourth Estate Public Benefit Corp. v. Wall-Street.com, LLC*,

586 U.S. 296 (2019), holding that a copyright owner may not commence an infringement suit until the Copyright Office has "registered" the copyright — meaning the Office has processed and approved the application and issued a certificate. Submitting an application is not enough. *Id*. at 302–04.

In the First Circuit, compliance with § 411(a) is a prerequisite to subject matter jurisdiction over a copyright infringement claim. *Torres-Negrón v. J & N Records, LLC*, 504 F.3d 151, 155 (1st Cir. 2007). Dismissal is required where the plaintiff cannot produce a registration certificate covering the specific work alleged to be infringed. *Id*.; *Latin Am Music Co. v. Media Power Grp., Inc*., 705 F. 3d 34, 43-44 (1st Cir. 2013)*.

After extensive discovery, Plaintiff has produced only a *Certificate of Recordation* (SUMF ¶¶14-15 and 25)— an entirely different legal instrument.  This distinction is not semantic. The First Circuit Court and this Court have well established that "a certificate of recordation is not evidence of registration because it 'merely indicates that the document attached was recorded in the Copyright Office on a specific date.'" *See Latin Am Music Co.,* 705 F. 3d at 43 (citing L*atin Am. Music Co. v. Media Power Group, Inc.,* No. 07-cv-2254 (ADC), 2011 U.S. Dist. LEXIS 34824 (D.P.R. Mar. 30, 2011). "Because recordation of an instrument relating to a work does not indicate that the work itself has been registered, see 17 U.S.C. §205 (a), (c) a certificate of recordation does not suffice to prove compliance with the registration requirement." *Latin Am Music Co.,* 705 F. 3d at 43.  Here, Plaintiff possesses only the former, it has not satisfied § 411(a), and Count I must be dismissed.

Even assuming for the sake of the argument that § 411(a) is satisfied, which is denied, Plaintiff still cannot enforce those rights because there is **no** evidence in this case's record that any transfer of ownership effectively took place or was recorded with the U.S. Copyright Office providing Plaintiff WE, LLC rights over the asserted material.

11

Under 17 U.S.C. § 205(d), a party claiming ownership "by virtue of a transfer" is not entitled to institute an infringement action *unless* the instrument of transfer has been recorded in the Copyright Office. This requirement ensures a clear chain of title and protects against competing or undisclosed claims of ownership. *See Techniques, Inc. v. Rohn*, 592 F. Supp. 1195, 1197 (S.D.N.Y. 1984) (<u>citing</u> *Nation's Choice Vitamin Co. v. General Mills, Inc.*, 526 F. Supp. 1014, 1017 (S.D.N.Y. 1981) ("17 U.S.C. § 205(d) mandates that recordation of the transfer is a jurisdictional prerequisite to an infringement action. Failure to comply with that provision deprives the court of subject matter jurisdiction.)

Here, Plaintiff clearly admits that the July 24, 2017 assignment from Rodríguez-Miranda to WE, LLC—the very document on which Plaintiff bases its ownership claim—was never recorded with the Copyright Office. (SUMF ¶26**).**

In sum, there is not a single document from the U.S. Copyright Office  that evidence of registration with respect to the WE's Coqui Design or Parrot Design or any document that identifies Plaintiff as the author or claimant or that reflect any recorded assignment or transfer of rights to Plaintiff. *See* (SUMF ¶¶13, 14, 18, 22, 24-26)

Because Plaintiff's claimed ownership arises exclusively through alleged transfers—and said transfers were never recorded - Plaintiff lacks standing to bring this action as a matter of law.

**B.**     <u>**Even if the suit could proceed, the *Coquico Litigation* Plaintiff Relies Upon Does not Cover the Work Asserted**</u>

### i. Registration Covers Only the Deposited Work, Not Derivative Versions.

It is black-letter law that a registration covers only the specific work that was deposited with the Copyright Office at the time of registration. A plaintiff cannot use a registration for one work to assert infringement of a different, modified version. The case of *Johnson v. Gordon,* 409 F. 3d 12, 20 (1ˢᵗ Cir. 2005) supports the proposition that a copyright registration for one work

cannot be used to enforce rights in a different work or a modified version of the original. This rule is essential to the copyright system: it ensures that the Copyright Office has reviewed and registered the specific work at issue, and that the public has constructive notice of what is protected.

Plaintiff's *Amended Complaint* relies on the Court findings in the *Coquico Litigation*, and ruling by 1st Circuit Court in *Coquico, Inc. v. Rodriguez Miranda*, 562 F.3d 62 (1st Cir. 2009) (**Dkt. 42, ¶29**). The case determined that certain original design features of the *Común Coquí* are entitled to copyright protection, including its distinctive stitching pattern, idiosyncratic color scheme, pose, the placement of the flag on the underbelly, and the overall dimensions of the design when viewed collectively. *Id.* at p. 69.

However, to prove copyright infringement, a plaintiff must establish not only that a registration exists, but that the registered work matches the work asserted. Without the deposit copy — the actual work submitted to the Copyright Office at the time of registration — neither the court nor the parties can determine what the registration covers. The Court *in Structured Asset Sales, LLC v. Sheeran,* 120 F.4th 1066, 1075 (2nd Cir. 2024) held that liability for infringement cannot be imposed where the scope of the asserted copyright is undefined. To that end, the Copyright Act makes deposit and registration a condition precedent to suit, ensuring that the contours of the claimed work are properly identified. *See* 17 U.S.C. § 411(a); 2 Nimmer on Copyright § 7.16[A][2][b] (2024).

Plaintiff produced no deposit copies, no Copyright Office correspondence, and no evidence of what design was actually registered in the *Coquico Litigation* (SUMF ¶¶37-38). This evidentiary void is independently dispositive. Because the court cannot determine whether there is a registered work and if there is, whether that registered work matches the Defendants' allegedly infringing work, Plaintiff cannot carry its burden of proof and summary judgment must be granted.

### ii. The Work Plaintiff Asserts Is Not the Work That Was Registered

What is worst, Rodríguez-Miranda admitted on the record that the plush toy Plaintiff currently sells an bases its claim, the *Coqui Design*, (SUMF ¶ 9 and Exhibit 8) **is not the same model as the *Coquico Coquí* toy** (SUMF ¶¶ 30 and 31). He further confirmed that Plaintiff's current plush toy differs from the *Coquico Coquí* across multiple specific features. In particular, the stitching pattern was different, limited to the eyes and flag, while the rest differed. The toes were different—Plaintiff's toy has five toes (four in front), whereas the *Coquico Coquí* has three. The dimensions and overall size are not the same, as he expressly admitted. The placement of the Puerto Rican flag appears in a different location, and the nostril stitching reflects a different design treatment. (SUMF ¶32.) Additionally, the color combination of both animals is also noticeably different with the Coquico Coqui using browns and WE's Coqui Design using considerable lighter beige colors. S*ee* **Figures 2** and **3** included herewith. These are not minor variations. They are the very elements the First Circuit identified as protectable in the *Coquico Litgation*. *See Coquico, Inc.* 562 F.3d 69.

Thus, even assuming that the *Coquico Coqui* was property registered and protected, where, as here, the registered and asserted works differ on the specific features that support copyright protection, Plaintiff **cannot** invoke that registration. The plush toy Plaintiff sues upon in this case is simply **not** the work that was registered.

To the extent Plaintiff modified the original *Coquico Coqui* design — adding, altering, or reconfiguring its elements — the resulting toy constitutes a derivative work under 17 U.S.C. § 103. A derivative work receives independent copyright protection only if it is separately registered. 17 U.S.C. §§ 103(b), 408. In *Murray Hill. Pub'ns, Inc. v. ABC Communs., Inc.*, 264 F. 3d 622, 630 (6th Cir. 2001) the Sixth Circuit held that "a copyright owner must formally register a derivative work with the United States Copyright Office as a prerequisite to filing a suit for infringement of

14

that derivative work." The court emphasized that Section 103 of the Copyright Act distinguishes the copyright in a derivative work from the copyright in the preexisting material, and registration of the derivative work is required to assert infringement of that work .

Plaintiff **never** registered its *Coqui Design* (SUMF ¶¶12-13). Therefore, even assuming that the original Coquico registration were valid and properly assigned to Plaintiff (*it is not*), that registration cannot extend to protect new, modified elements that were never deposited with the Copyright Office. Count I independently fails on this basis.

### C.    The Asserted Works Are Entitled, at Most, to Thin Protection

Even assuming *arguendo* that Plaintiff can rely on the *Coquico Coquí* as a validly registered work, the scope of protection afforded to that design is necessarily narrow.

Copyright protects only original expression — not elements dictated by nature, function, or common design conventions. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345 (1991). Where claimed elements flow from the subject matter itself, from industry convention, or from functional necessity, those elements belong to the public domain. *Satava v. Lowry*, 323 F.3d 805, 810 (9th Cir. 2003). Plaintiff's own deposition testimony establishes that each asserted element falls squarely within these unprotectable categories.

Plaintiff's corporate representative testified that in his understanding, his claimed copyright is based on the combination of elements in the coqui, specifically a cream-colored body, lighter belly, darker toes, plastic eyes, a stitched Puerto Rican flag, and a handtag. These are non-protectable elements. (SUMF ¶34).

Plaintiff's claimed "**color combination**"—a darker color on the upper portion and a lighter color on the lower portion—reflects a general design concept, not protectable expression. Such an arrangement is an abstract idea that can be expressed in countless ways and therefore falls outside the scope of copyright protection. Furthermore, Plaintiff testified that the chose of colors is

15

intended to replicate the real coqui's appearance. (SUMF ¶ 39). An author depicting an animal realistically may not claim copyright in colors dictated by that animal's biology. In *Satava*, the Ninth Circuit held that no copyright protection extends to elements of expression that naturally follow from the realistic depiction of a living creature. 323 F.3d at 810–11. In *Aliotti v. R. Dakin & Co.*, 831 F.2d 898, 901 (9th Cir. 1987) — a stuffed animal case directly on point — the court held that no copyright protection may be afforded to elements of expression that necessarily follow from the idea of such dolls, and that no reliance may be placed on any similarity resulting from the physiognomy of the depicted animal or the nature of stuffed animals.

**The plastic eyes fare no better:** Plaintiff conceded they are a common industry feature (SUMF ¶43), making them the plush toy equivalent of the unprotectable "clear glass shroud" in *Satava* — a standard material choice for the medium, not original expression.

The **Puerto Rican flag** stitched into the plush is doubly unprotectable: it is a preexisting public domain symbol, and Plaintiff admitted it serves the purely functional purpose of identifying the product as a Puerto Rican souvenir. (SUMF ¶42). *See Feist*, 499 U.S. at 345–46. The **hangtag** likewise serves a labeling function Plaintiff himself confirmed. (SUMF ¶¶44-45).

Plaintiff cannot rescue these elements by asserting them in combination. A combination of unprotectable elements is eligible for copyright protection only if those elements are numerous enough and their selection and arrangement original enough that their combination constitutes an original work of authorship. *Satava*, 323 F.3d at 811. The combination at issue —a selection of a darker color on the upper portion and a lighter color of the toy, standard plastic eyes, a public domain flag stitched to the toy, and a generic hangtag — does not approach that threshold. To hold otherwise would grant Plaintiff a monopoly over lifelike plush representations of a Puerto Rican animal incorporating a flag, precisely the result copyright law forbids. *Id.* at 812.

16

D.    **No Substantial Similarity Exists as a Matter of Law**

Given the thin scope of protection established above, Plaintiff must demonstrate virtual identity between the registered *Coquico Coquí* — the only work from which Plaintiff derives any copyright claim — and Defendants' product. *Satava*, 323 F.3d at 810–12. Plaintiff's current unregistered plush is not the proper comparator; it is the registered work that defines the boundaries of any claimed protection. *See* 17 U.S.C. § 411(a).

That comparison must be conducted by first filtering out all unprotectable elements and assessing whether protectable expression — and only protectable expression — is virtually identical across the two works. *Aliotti*, 831 F.2d at 901; *Satava*, 323 F.3d at 812. The undisputed record forecloses any such finding.

Plaintiff's own corporate representative, when shown the registered *Coquico Coquí* alongside Defendants' product, admitted the two differ in multiple respects. (SUMF ¶¶46-48). Specifically, Plaintiff acknowledged that the stitching patterns differ, with only limited similarity in the eye and flag stitching; the toe design differs; the placement and designs of the Puerto Rican flag differs; and the overall dimensions and proportions are not the same. (*Id*). These are not peripheral discrepancies — they go to the specific features Plaintiff identifies as protectable in its Amended Complaint (**Dkt. 42**, ¶¶ 29–36, 38–39). A side-by-side visual comparison further confirms these differences, revealing two distinct designs rather than substantially similar works. *See* **Figures 2** and **4** included herewith, and SUMF **Exhibit 6** and **Exhibit 16**.

Once the unprotectable elements are filtered out — coloration, plastic eyes, a public domain flag, and a standard hangtag — no protectable expression remains to compare. What is left are similarities only at the level of idea: a plush representation of a Puerto Rican animal incorporating a flag. That is not protectable expression. *Feist*, 499 U.S. at 345; *Satava*, 323 F.3d at 810.

17

No reasonable jury could find virtual identity of protected expression on this record. Summary judgment is warranted.

### E.     There is no Evidence of Copying

To prevail on copyright infringement, Plaintiff must establish (1) that Defendants copied the protected work (not that they independently created a similar one), and (2) that the copying amounted to improper appropriation. *Johnson v. Gordon*, 409 F.3d 12, 17-18 (1st Cir. 2005). Copying may be proven by evidence of access plus probative similarity. *Id.*

Plaintiff has neither. Rodríguez-Miranda admitted he has no direct evidence of access. His entire access theory is that his products are sold in the San Juan airport and that Defendants' principals travel frequently — therefore they must have seen the toys. (SUMF ¶50) This is legally insufficient. Mere availability of a work in the marketplace does not give rise to a reasonable inference of access. *Jones v. Blige*, 558 F.3d 485, 491-493 (6th Cir. 2009); *Towler v. Sayles,* 76 F.3d 579, 582 (4th Cir. 1996) ("A mere possibility that such an opportunity could have arisen will not suffice.")

### VI. Plaintiff's Lanham Act Claim (Count II) Fails as a Matter of Law

### A.  Plaintiff Has Failed to Define Its Alleged Trade Dress with the Requisite Specificity

A trade dress claimant must articulate its claimed trade dress with precision — a vague or shifting description is legally insufficient. *Maharishi Hardy Blechman Ltd. v. Abercrombie & Fitch Co.*, 292 F. Supp. 2d 535, 551 (S.D.N.Y. 2003); *Walker & Zanger, Inc. v. Paragon Indus.*, 549 F. Supp. 2d 1168, 1181 (N.D. Cal. 2007). The First Circuit likewise demands that a plaintiff identify the specific combination of elements that constitutes the protectable trade dress. *Yankee Candle Co. v. Bridgewater Candle Co.*, 259 F.3d 25, 38 (1st Cir. 2001). Plaintiff's claim fails at this threshold.

*First,* Plaintiff has never sought federal registration for any trade dress, which while not dispositive, is probative of the absence of a clearly defined, consistently asserted trade dress. (SUMF ¶56). *Second,* and most damning, when asked to produce documents describing or defining the elements of its alleged trade dress, Plaintiff responded that no such documents exist and that the trade dress is "reflected in the plush toys themselves." (SUMF ¶ 58) This is precisely the kind of open-ended, post-hoc description courts have rejected. A plaintiff cannot simply point to its product and ask the court to divine what is protectable. *Yankee Candle*, 259 F.3d at 38 ("a plaintiff must be able to articulate the specific elements which comprise its distinct dress"). *Third,* Plaintiff's own interrogatory response defines its trade dress as "the toys' configuration, features, colors, presentation and their overall combination" — a description so broad and generic that it provides no meaningful boundaries for the claimed trade dress and would effectively give Plaintiff a monopoly over an entire product category. (SUMF ¶ 59). *Fourth*, Plaintiff's principal testified that the alleged "likeness" consists of features such as pose, eyes, stitching, and the presence of a Puerto Rican flag — individually functional or commonplace elements that, even in combination, are insufficiently specific to define a protectable trade dress. (SUMF ¶ 60).

In sum, Plaintiff has failed to define its alleged trade dress with the specificity the law demands.

### B.    <u>Product Design Trade Dress Requires Proof of Secondary Meaning, which is entirely absent from this record</u>

The Supreme Court has held that product design trade dress — as distinguished from product packaging — can never be inherently distinctive and therefore always requires proof of acquired secondary meaning to be protectable. *See Wal-Mart Stores, Inc. v. Samara Bros., Inc.,* 529 U.S. 205, 213–14 (2000). Secondary meaning exists when "in the minds of the public, the primary significance of a product feature or term is to identify the source of the product rather than

the product itself." *Id.* at 211 (quoting *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 851 n.11 (1982)).

In the First Circuit, the court in *Boston Beer Co., Ltd. P'ship v. Slesar Bros. Brewing Co.*, 9 F.3d 175, 181-183 (1993) recognized that consumer surveys and testimony as direct evidence of secondary meaning. The court also acknowledged that circumstantial evidence, such as advertising efforts, sales success, and exclusivity of use, could support a finding of secondary meaning.

**<u>Plaintiff has none of this</u>.** No consumer survey was conducted. (SUMF¶63). No evidence of an advertising campaign focused on the design as a brand identifier was identified was provided. No media coverage recognizing the design as a source indicator was produced or advertising campaign. (SUMF¶68). In fact, Rodrguez-Miranda testified that other than Facebook advertising no other marketing campaign has been implemented.  (SUMF¶64-65).

Without secondary meaning, Plaintiff's trade dress claim cannot survive summary judgment. Plaintiff also failed to show sales and revenue to possibly justify market penetration or recognition. (SUMF¶67). *See Harlequin Enterprises Ltd. V. Gulf & W. Corp.,* 644 F. 2d 946, 949 (2nd Cir 1981)(holding that product's sales success might be indicative of whether consumers associate a product's trade dress with its origin.)

Its entire confusion case consists of acquaintances—personal friends and a business contact—who called to ask whether the All Ways 99 toys were copies of his. (SUMF ¶¶73-75). These alleged calls are <u>unsupported by any documentary evidence</u>, such as written communications, records, or third-party testimony. Even if credited, they do not show that the public associates the design with Wild Encantos as a source; they show only that those individuals were familiar with Plaintiff's products. *Gen. Motors Corp. v. Lanard Toys, Inc.*, 468 F.3d 405, 418 (6th Cir. 2006) (evidence of copying intent does not prove secondary meaning).

C.     **The Design Elements are Functional and Categorically Unprotectable**

It is also well established that functional product features cannot be protected as trade dress, regardless of secondary meaning. *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 29 (2001). A feature is functional "if it is essential to the use or purpose of the article or if it affects the cost or quality of the article." *Id.* (quoting *Qualitex Co. v. Jacobson Prods. Co.,* 514 U.S. 159, 165 (1995)). Every element Plaintiff seeks to protect is functional by Rodríguez-Mirada's own admissions. (SUMF ¶¶39-45). Under *TrafFix*, functionality is an absolute bar to trade dress protection. Because the elements Plaintiff asserts are functional by its own representative's sworn admissions, the Lanham Act claim fails as a matter of law.

D.     **Plaintiff Cannot Establish Likelihood of Confusion.**

More importantly, however, to prevail on a Section 43(a) false designation claim, Plaintiff must establish a likelihood of consumer confusion as to the source of Defendants' products. 15 U.S.C. § 1125(a). Relevant factors in the First Circuit include the strength of the trade dress, the similarity of the marks, the competitive proximity of the goods, actual confusion, and the sophistication of buyers. *Pignons S.A. de Mecanique de Precision v. Polaroid Corp.*, 657 F. 2d 482, 487 (1st Cir. 1981).

As demonstrated above, Plaintiff's trade dress is weak — it consists entirely of functional or natural elements. The products are sold in different channels (airport stores and Walgreens *versus* specific All Ways 99 specialty bargain stores operated by exclusively  by Defendants) (SUMF ¶¶49 and 72) and at significantly different price points (approximately $12–$15 for Plaintiff's products versus $3.99 for Defendants') (SUMF¶¶ 69 and 70).

The only confusion evidence — four phone calls from friends and associates — does not establish that any consumer was actually confused into purchasing Defendants' product believing it was Plaintiff's. (SUMF ¶¶73-75) The callers' questions ("Are these copies of yours?") actually

21

demonstrate the opposite: they could distinguish the products but noticed similarity. On this record, no reasonable jury could find a likelihood of confusion.

### E.    The Lanham Act Claim is Preempted by Copyright Act

Where a Lanham Act claim is grounded solely in the alleged copying of expressive design elements — the same elements that form the basis of a copyright claim — it is preempted by the Copyright Act. 17 U.S.C. § 301; *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 33–34 (2003). [6]

Plaintiff's Count II is, at its core, a claim that Defendants copied the artistic design elements — shape, color, ornamentation — of its plush toys. These are precisely the elements asserted under Count I. The trade dress Plaintiff seeks to protect is the copyrighted design itself. Because the Lanham Act claim is coextensive with Plaintiff's copyright claim and seeks to protect the same rights, it is preempted and must be dismissed.

### F.    Plaintiff has no Cognizable Damages Under the Lanham Act

Plaintiff **cannot** recover damages under the Lanham Act because its own admissions establish the absence of any compensable harm and the lack of any basis for disgorgement.

Plaintiff has expressly disclaimed any actual damages. Specifically, Plaintiff stipulated that it has had "zero losses" and confirmed in its supplemental interrogatory responses that it "did not experience a loss of sales during the relevant period" and is not seeking actual damages. (SUMF ¶¶ 78-81). Consistent with those admissions, Rodríguez-Miranda testified under oath that this is "not a financial loss case." (SUMF ¶ 77).

---

[6] In *Dastar*, the Supreme Court held that the Lanham Act does not create a cause of action for the use of otherwise unprotected works without attribution, as such claims would effectively create a "species of mutant copyright law" that conflicts with the Copyright Act's provisions and limitations. *Dastar Corp.*, 539 U.S. at 34. Specifically, the Court emphasized that allowing a Lanham Act claim for unauthorized copying would improperly extend copyright-like protections to works that are either unprotected or in the public domain, thereby undermining the Copyright Act's framework. *Id.*

*Lastly,* discovery long closed and Plaintiff offered no methodology or evidence to support disgorgement of Defendants' profits. There is no evidence tying Defendants' alleged sales to Plaintiff's business, nor any basis to attribute Defendants' revenues to the alleged conduct.

In short, Plaintiff has **no** evidence of actual damages, and no basis for disgorgement. Accordingly, Plaintiff cannot recover monetary relief under the Lanham Act as a matter of law.

### VII. DEFENDANTS ARE ENTITLED TO ATTORNEYS' FEES

#### A.    Attorneys' Fees Are Warranted Under 17 U.S.C. § 505

The Copyright Act authorizes the court to award reasonable attorneys' fees to the prevailing party. *See* 17 U.S.C. § 505. The United States Supreme Court in *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534-535 (1994) clarified that prevailing defendants are entitled to the same consideration as prevailing plaintiffs in the award of attorneys' fees under 17 U.S.C.S. 505.

In *Kirtsaeng v. John Wiley & Sons, Inc.*, 579 U.S. 197, 202-208 (2016), the Supreme Court held that courts must give substantial weight to the objective unreasonableness of the losing party's litigating position, while also considering frivolousness, motivation, and the need for deterrence. All of these factors weigh heavily in Defendants' favor.

This is not a case where a copyright holder with a colorable claim litigated and lost on the merits. Plaintiff filed and maintained this action despite the absence of the most basic prerequisites to suit. Plaintiff produced no certificate of registration, no deposit materials, no instrument of conveyance effectuating the alleged transfer of rights, and no recorded assignment — each independently fatal to its claim and known, or easily knowable, before this lawsuit was filed. *See Latin Am. Music Co.,* 705 F.3d at 43–44; 17 U.S.C. §§ 204(a), 205(d), 411(a). Plaintiff further admitted through its own corporate representative that the work it actually sells and asserts in this litigation is **not** the same work as the registered *Coquico Coquí* — meaning that even its registration theory was legally unfounded from the outset. (SUMF ¶31).

23

Beyond the threshold defects, Plaintiff's substantive claims fared no better. Every element it identified as protectable — the toy coloration, plastic eyes, a public domain flag, and a standard hangtag — was conceded by its own witness to be either dictated by nature, functional, or standard to the industry. (SUMF ¶¶ 39-45.) Plaintiff had no evidence of access or copying (SUMF ¶50). It stipulated to zero actual damages, disclaimed any financial loss, and offered no methodology for any alternative measure of recovery. (SUMF ¶¶ 77-80) Its confusion evidence consisted of four phone calls from personal acquaintances without documentary evidence (SUMF ¶¶ 73-75.) Plaintiff further fails to provide any specific dates for these alleged instances, offering only vague testimony that they occurred "sometime" in 2022 or 2023, despite filing this action in April 2024. (SUMF ¶ 76).  Its Lanham Act claim is facially preempted and independently fails on every element.

The objective unreasonableness of Plaintiff's position across every element of both counts, combined with the complete absence of evidence on threshold jurisdictional requirements, presents precisely the kind of litigation conduct that §505 and *Kirtsaeng* contemplate for a fee award.

**B.    The Totality of the Record and Plaintiff's Conduct Throughout This Litigation Confirms the Need for a Fee Award**

A fee award is appropriate, necessary to compensate Defendants for the burden of this litigation and warranted to deter similarly unfounded intellectual property claims from burdening this Court and defendants.

The propriety of attorney's fees is further reinforced by the parties' litigation conduct. From the outset, Defendants acted in good faith to resolve this dispute efficiently and minimize burden on the Court and the parties. Defendants consented to a preliminary injunction and voluntarily ceased all sales of the accused products immediately upon the filing of this lawsuit (**Dkt. 20**), eliminating any ongoing harm Plaintiff could credibly assert. It engaged from the outset in

settlement conversations with the Parties requesting a brief stay of the proceeding for said purpose. (**Dkt. 20** and **23**). Consistent with this conduct, Plaintiff's own corporate representative testified that, upon notice of the lawsuit, Defendants promptly removed the accused merchandise from stores and transferred it to their warehouse. (SUMF ¶ 54). He further confirmed that, following the filing of the lawsuit, the parties engaged in efforts to resolve the matter, including settlement offer**s.** (SUMF ¶ 55).

This good-faith conduct stands in contrast to Plaintiff's pre-suit behavior. Plaintiff's corporate representative admitted that, prior to filing suit, neither he nor his counsel provided any notice of the alleged infringement, including by cease-and-desist letter or other communication. (SUMF ¶ 53). Indeed, Plaintiff concedes that it has no evidence that Defendants had prior knowledge of the alleged copyrights. (SUMF ¶ 52).

Plaintiff, by contrast, prolonged this litigation at every turn. Despite Defendants' early voluntary cessation of all accused sales—eliminating any claim of ongoing irreparable harm—Plaintiff pressed forward on both counts through the close of discovery. More significantly, Plaintiff's discovery conduct forced Defendants to file multiple motions to compel (**Dkt. 58 and 74)** to obtain basic disclosures, requiring Defendants to incur unnecessary fees before the merits could even be addressed.

This pattern—a plaintiff lacking evidence of registration, ownership, damages, or protectable expression, who nonetheless declined reasonable opportunities to resolve the case and necessitated motion practice through discovery non-compliance—is precisely the type of conduct that warrants a fee award for purposes of deterrence. *Kirtsaeng v. John Wiley & Sons, Inc.*, 579 U.S. 197, 208 (2016). The contrast between Defendants' good-faith efforts to resolve this dispute and Plaintiff's persistence in advancing a legally unsupported position underscores that a fee award is not only appropriate, but necessary.

Accordingly, Defendants respectfully request that the Court award reasonable attorneys' fees and costs pursuant to 17 U.S.C. § 505.

**WHEREFORE**, Defendants' respectfully request that the Court grant this motion for summary judgment, dismiss the *Amended Complaint* (**Dkt. 42**) filed by Plaintiff WE LLC, deny all relief sought by the Plaintiff and grant Defendants such other and further relief, in law or in equity, to which it may justly be entitled. Furthermore, in light of the frivolous and baseless nature of Plaintiff' claims, and pursuant to 17 U.S.C. § 505 Defendants requests that the Court exercise its inherent authority to award attorney's fees and costs incurred in defending against these claims.

In San Juan, Puerto Rico, on this 22nd day of April 2026.

**CERTIFICATION:** An electronic copy of the foregoing motion was filed with the Clerk of the Court using the CM/ECF system which will send notification of this filing to opposing counsel of record.

**ADSUAR**
*Counsel for Defendants*
P.O. Box 70294
San Juan, PR 00936-8294
Tel.: 787.756.9000
Fax: 787.756.9010

*/s/ Luis Pérez-Giusti*
LUIS PEREZ-GIUSTI
USDC-PR 208608
lpg@amgprlaw.com


*/s/ Alexandra Casellas Cabrera*
ALEXANDRA CASELLAS CABRERA
USDC-PR 301010
acasellas@amgprlaw.com
