**UNITED STATES DISTRICT COURT**
**DISTRICT OF PUERTO RICO**

| | |
|---|---|
| WE, LLC d/b/a WILD ENCANTOS., <br><br> Plaintiff, <br><br> v. <br><br> CARIBBEAN RETAIL VENTURES, INC., SALOMON ABADI, Jane Doe, and their conjugal partnership; JOEL BENDER, Susan Roe, and their conjugal partnership, <br><br> Defendants. | Civil No. 3:24-cv-01185 (CVR) <br><br><br> Re: Copyright Infringement/Lanham Act |

**RESPONSE TO STATEMENT OF UNCONTESTED FACTS IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**TO THE HONORABLE COURT**

**COME NOW** Pursuant to Fed. R. Civ. P. 56 and Local Rule 56, Plaintiff WE, LLC, d/b/a Wild Encantso ( "Defendant") respectfully submit the following Response to Defendants' Statement of Uncontested Facts in opposition to Defendants' *Motion for Summary Judgment and Memorandum of Law in Support Thereof*.

## I.  THE PARTIES

1.  Plaintiff WE, LLC, doing business as Wild Encantos, is a limited liability company organized and incorporated under the laws of the Commonwealth of Puerto Rico on June 15, 2017. *See* **Exhibit ("Ex.") 1**- Deposition of Angel Rodríguez Miranda of December 5th 2025 ("Depo. I"), at 18:6–11; *see*, also **Ex. 2** - Plaintiff's Answer to Co-Defendants First Set of Interrogatories and Request for Production of Documents ("Pl.'s Ans. to Co-Defs.' First Set of Interrogs. & RFPs"), Interrogatory No. 2 at p. 2.

**Admitted.**

2.  Angel Rodríguez-Miranda ("Rodríguez-Miranda") is the President of Wild Encantos. *See*

1

**Ex. 1** - Depo. I at 18:6-7.

**Admitted.**

3. Rodríguez-Miranda is the sole corporate representative of WE, LLC and its President. He testified that he is "a one man show" who handles all day-to-day operations, product design, manufacturing orders, client relationships, bookkeeping, and logistics. *See* **Ex. 1**-Depo. I at 18:6–24; and **Ex. 3**, Deposition of Angel Rodríguez Miranda of February 5th, 2026, ("Depo. II") at 123:6–7; 124:12–14; 174:9–12.

**Admitted.**

4. Co-defendant Caribbean Retail Ventures, Inc. ("CRV") is a corporation organized under the laws of the Commonwealth of Puerto Rico that owns and operates All Ways 99 retail stores in the Island. *See* **Ex. 4 -** Answer to the Amended Complaint at ¶¶16, 45.

**Admitted.**

5. In or about February 2022, CRV began selling a coquí and Puerto Rican parrot animal plush toy, hereinafter "Defendants' Coquí Plush" and "Defendants' Parrot Plush". *See* **Ex. 5** – Caribbean Retail Ventures, Inc.'s Answers and Objections to Plaintiff WE, LLC's First Set of Interrogatories, Interrogatory No. 5.

**Admitted.**

6. Defendants' plush toys were designed by CRV's plush toy manufacturer. *See* **Ex. 5** – Caribbean Retail Ventures, Inc.'s Answers and Objections to Plaintiff WE, LLC's First Set of Interrogatories, Interrogatory No. 6.

**Admitted.**

7. Photographs of *Defendants' Coquí Plush* and *Defendants' Parrot Plush*, which were marked and identified during Rodríguez-Miranda's deposition as Exhibit 16 and Exhibit 13, respectively, are attached thereto as **Ex. 6** – Deposition Exhibit 16 (Defendants' Coquí Plush) and

**Ex. 7 –** Deposition Exhibit 13 (Defendants' Parrot Plush).

**Admitted.**

## II. THE WORKS ALLEGED TO HAVE BEEN INFRINGED

8.   Plaintiff claims ownership of certain plush toy designs, including a coquí frog ("Coqui Design") and a Puerto Rican parrot ("Parrot Design"), which it alleges were infringed by Defendants. *See* **Dkt. 42**- Am. Compl. at ¶¶ 7 and 10.

**Admitted.** *See also* **the Copyright Registrations for the Comun Coqui and the Puerto Rican parrot. Plaintiff's Exhibits 1 and 2.**

9.   Plaintiff's corporate representative identified the two works during his deposition as Exhibit 3 (Coquí Design) and Exhibit 5 (Parrot Design), respectively, as the plush toy designs he contends are similar to Defendants' products and are at issue in this case. *See* **Ex. 1** - Depo. I at 26:8–27:17, **Ex. 8** - Deposition Exhibit 3; and **Ex. 1** - Depo. I at 35:1–5 and 36:5-11; **Ex. 9** - Deposition Exhibit 5.

**Admitted.**

10. Rodríguez-Miranda admitted that Wild Encantos has sold different coquí plush toy models simultaneously since its founding and that these models vary in size, shape, stitching, and design features. *See* **Ex. 1** - Depo. I 59:1-22; and 78:7–16; and **Ex. 10 –** Deposition Exhibit 8 (CRV 0066, 0076, 0077, 0078, 0079, 0080, 0081).

**It is true that Mr. Rodriguez so testified. It is not an admission. A copyright holder may market works that are not all identical.**

11. Wild Encantos began selling plush toys at issue on or about June 24, 2017. *See* **Ex. 2** - Pl.'s Ans. to Co-Defs.' First Set of Interrogs. & RFPs, Interrogatory No. 13.

**Admitted.**

### III.  COPYRIGHT CLAIM

**A.    No Filed Copyright Application by Plaintiff or Wild Encantos/WE, LLC**

12. Rodrígez-Miranda acknowledged during his deposition that he has not filed copyright registrations for any of the coquí plush toy models it sells. *See* **Ex. 1** - Depo. I at 34:7-11, and 60:21–25.

**While this statement is true; it is not material because Mr. Rodriguez Miranda owns the copyrights WE, LLC is enforcing in this case because Mr. Rodriguez Miranda bought them.** *See* **Plaintiff's Exhibit 3 to this Opposition to Defendants' Statement of Material Facts, Docket 172 Return of Sale from the US Marshal, which identifies the sale of the musical plush toy Comun by Coqui and Tata, who is the parrot at 8-9.** *See also* **Plaintiff's Exhibits 1 and 2.**

13. Rodríguez-Miranda admitted under oath that neither he personally nor Wild Encantos ever filed a copyright application before the United States Copyright Office for either of the two designs alleged to be infringed in this action — the *Coquí Design* and the *Parrot Design*. *See* **Ex. 1** - Depo. II at 125:7 to 126:12.

**While this statement is true; it is not material because Mr. Rodriguez Miranda owned the copyrights WE, LLC is enforcing in this case because Mr. Rodriguez Miranda bought them and subsequently transferred them to WE, LLC.** *See* **Plaintiff's Exhibit 3 to this Opposition to Defendants' Statement of Material Facts.** *See also* **Plaintiff's Exhibit 1 and 2.**

**B.    No Certificate of Registration Produced during discovery**

14. Defendants requested production of any Certificate of Registration from the United States Copyright Office evidencing registration of the copyrights Plaintiff claims to own. The only copyright-related document produced by Plaintiff issued by the U.S Copyright Office is a *Certificate*

*of Recordation. See* **Ex. 11** - Supplemental Answer to First Set of Interrogatories and Request for Production of Documents ("Supp. Ans. to First Set of Interrogs. & RFP's"), Request No. 6 and 7; **Ex. 3** - Depo. II at 127:9 to 129:8; and **Ex. 12** – Dkt 1-2 at p. 1-2 (Certificate of Recordation).

**While this statement is true; it is not material because Mr. Rodriguez Miranda owned the copyrights WE, LLC is enforcing in this case because Mr. Rodriguez Miranda bought them.** ***See*** **Plaintiff's Exhibit 3 to this Opposition to Defendants' Statement of Material Facts at 8-9. The Certificate of Recordation** *registers* **Mr. Rodriguez Miranda's ownership interest in the copyright. Defendants' Exhibit 12. Mr. Rodriguez Miranda then transferred those copyrights to WE, LLC.** ***See*** **Defendants' Exhibit 14**

15. Rodríguez-Miranda testified that Plaintiff has not produced any Certificate of Registration for the plush toy designs at issue, and confirmed that no such certificates appear in the documents produced. *See* **Ex. 3 -** Depo. II at 128:5 to 129:8; *see*, also; **Ex.1** - Depo. I at 31:13–18.

**The Certificates of Registration are public documents registered at the United States Copyright Office.** ***See*** **Exhibits 1 and 2.**

### C.     Lack of Evidence of Ownership

16. Rodríguez-Miranda claims to have acquired the copyrights of the plush toys at issue in a judicial sale after prevailing in a lawsuit against Coquico, Inc. *See* **Ex. 13** – Dkt. 1-1, Sworn Declaration at p. 2 second paragraph; *see*, also **Ex. 3 -** Depo II at 138:9-15.

**Correct. Mr. Rodriguez bought the Coquico copyrights.** ***See*** **Docket 172 of 10-1557, Plaintiff's Exhibit 3 to this Opposition; Defendants' Exhibit 12.**

17. Rodríguez-Miranda confirmed that the only document he has and has produced regarding the alleged transfer of copyrights from Coquico Inc. is a *Notice of Sale*. *See* **Ex. 3** - Depo. II at 140:13-21; *see*, also **Ex. 12**– Dkt. 1-2 at p. 11.

**Admitted. But a deposition is not a "gotcha game." Exhibit 12 demonstrates that Mr.**

**Rodriguez bought the Coquico registrations at the judicial sale.** *Id.* **At 10, 11 where the registrations for the coqui and the parrot are listed. This Court can take judicial notice that the sale took place.** *See* **Exhibit 3. At page 2, the U.S. Marshal Daniel Cruz states, "said Notice of Sale was published as required and is supported by the accompanying Affidavit of Publication. Further, that the sale began at the hour of 10:00 AM on the 16th day of July , 2014; when I offered for sale said property in Public Auction and that I received from Angel Rodriguez in the amount of $500.00. Such amount was offered as the highest bid and that being the highest bid received, <u>the sale was awarded to him [Angel Rodriguez.]</u> Mas claro no canta un gallo, or a cotorra.  In absence of evidence that the judicial sale of the specific registrations of the coqui and parrot plush toys took place, the U.S. Copyright Office would not have recorded these copyrights in Angel Rodriguez Miranda's name.**

18.     Rodríguez-Miranda admitted that no Court Order, Bill of Sale, or Marshal-issued confirmation of the completed sale was attached to or included within any of the documents produced. *See* **Ex. 1** - Depo. I at 51:6 to 52:5.

**Admitted.** *See* **previous response. Exhibit 12 is confirmation that Mr. Rodriguez bought the Coquico registrations.**

19.     Plaintiff produced a *Process Receipt and Return* which states only that "[p]roperty sold to Mr. Angel Rodríguez in the amount of five hundred dollars ($500.00) to be credited to case" but does not identify, list, or describe which property was sold. *See* **Ex. 12** – Dkt. 1-2 at p. 3.

**Admitted, but Docket 172 from 10-1557 exists, and this Court can take judicial notice of it. Plaintiff also produced the Recordation from the U.S. Copyright Office.**

20. The auction attendance records do not identify or list any specific property, including any

copyrights, allegedly sold to Rodríguez-Miranda. *See Id*. at p. 5-8.

**Denied. *See* Plaintiff's Exhibit 3 lists the copyright registrations sold, which shows that pursuant to the court's order, Mr. Rodriguez bought Coquico's copyrights.**

21. The *Writ of Execution* and related order of September 19, 2011, produced by Plaintiff does not itself transfer any copyright and Rodríguez-Miranda acknowledged this. *See* **Ex.1 -** Depo. I at 50:25 to 51:2, *see,* also, **Ex. 12** – Dkt. 1-2 at p. 9.

**Denied. Mr. Rodriguez Miranda bought the copyrights subject of this lawsuit. *See* Plaintiff's Exhibit 3.**

22. Rodríguez-Miranda acknowledged that following this auction, there was no agreement with Coquico Inc, no conversation on the assignment of transfer of the plush toys copyright. *See* **Ex. 1** - Depo. I at 41:21-25 and at 52:25 to 53:3.

> **Admitted. No such agreement was necessary because Mr. Rodriguez Miranda bought the copyrights subject of this lawsuit at the judicial sale. *See* Plaintiffs' Exhibit 3.**

23. Rodríguez-Miranda claims that after acquiring the copyrights though the judicial sale he assigned those rights to plaintiff WE, LLC. *See* **Ex. 13** – Dkt. 1-1 at p. 2 second paragraph; **Ex. 1** – Depo. I at 53:9 to 56:1.

> **Admitted. Mr. Rodriguez Miranda so claims because that is true. Defendants' Exhibit 14.**

24. The only copyright-related document produced in this case of the alleged transfer between Rodríguez-Miranda and Plaintiff WE, LLC is a document described as a "Copyright Assignment" dated July 24, 2017. *See* **Ex. 14** – Deposition Exhibit 7 (Copyright Assignment).

> **Admitted. No other document was necessary. 17 U.S.C. 205(a)**

25. The Copyright Assignment lists a series of purportedly registered works, including:

(a) *Coquí Común*, Copyright No. VA0001075653; (b) *Coquí: We Sing*, Copyright Nos.

TX0005550274 and TX0005535397; (c) a musical plush toy frog named "Común," a commissioned work for Coquico, Inc. by Michael Tian, Copyright No. V3473D525; (d) *Rufus* by Coquico, Inc., Copyright No. VA0001138519; and (e) *Tata* by Coquico, Inc. Plaintiff has not produced any certificates of registration for these works, and its corporate representative testified that he has produced all documents in his possession and has requested additional records from the U.S. *See* **Ex. 14** – Deposition Exhibit 7 (Copyright Assignment); **Ex. 11** - Supp. Ans. to First Set of Interrogs. & RFP's, Requests No. 6 and 7; and **Ex. 1** – Depo. II at 129:2-8.

**Admitted.**

26.     Rodríguez-Miranda admitted that the July 24, 2017 copyright assignment from himself personally to WE, LLC — the document by which Wild Encantos claims ownership of the copyrights at issue — was never submitted to the United States Copyright Office for recordation. *See* **Dkt. 42**, ¶23- *Amended Complaint*, and **Ex. 1** - Depo. I. at 57:9-17.

> **Admitted. There is no obligation to do so. 17 U.S.C. 204(a).**

**D.     Plaintiff Relies on a Registration Issued to a Third Party for Different Works**

27.     Rodríguez-Miranda admitted that he and Wild Encantos did not file any application to register the coquí or parrot plush toys, and that any registration efforts were undertaken by his former partner. *See* **Ex. 1-** Depo. I at 34:22 to 35:5; and 40:3–10 (coquí); *see*, also, **Ex. 1-** Depo. I at 36:5 to 37:23 (parrot).

> **Denied. Mr. Rodriguez Miranda registered the judicial sale, whereby he purchased Coquico, Inc.'s copyrights with the U.S. Copyright Office. Plaintiff's Exhibit 3, Defendants Exhibit 12.**

28.     Rodríguez-Miranda further testified that his belief that the designs are protected is based on what was "discussed" in prior litigation involving the prior owner Coquico, *Coquico Inc. v. Angel Rodriguez Miranda, et al.*, Civ. 07-1432. *See* **Ex. 1-** Depo. I at 33:8–34:6; *see,* also **Dkt.**

**42** at ¶11- *Amended Complaint.*

**Admitted that that was Mr. Rodriguez Miranda's testimony. Exhibit 3 and The recordation with U.S. Copyright Office, Defendants' Exhibit 12  evidence's Mr. Rodriguez's ownership right to  these copyrights.**

29.     *Coquico Inc. v. Angel Rodriguez Miranda, et al.*, Civ. 07-1432 involved plaintiff Coquico who was alleging copyright infringement against Rodriguez-Miranda over its coqui plush toy ("Coquico's Coqui"). **Ex. 1** - Depo. I*,* at 64:9-12; *see,* also **Ex. 3** – Depo II at 132:24 to 133:7; and **Ex. 15** – Deposition Exhibit 9 (*Motion Requesting Summary Judgment […] Civ. 07-143*2) pages identified as CRV Supplemental Initial Disclosures #0248-0251.

**Admitted.**

30.     The Coquico Coquí was identified during Rodríguez-Miranda's deposition as Exhibit 10, true and correct copies of that exhibit are attached hereto as **Ex. 16** Deposition Exhibit 10 (Coquico Coquí); *see,* also, **Ex. 1** – Depo. I at 63:17-23.

**Admitted.**

31.     Rodríguez-Miranda testified that the coquí plush toy at issue in this case, the Coqui Design, is not the same model as the Coquico Coquí plush toy  in *Coquico Inc. v. Angel Rodríguez-Miranda, et al.*, Civ. No. 07-1432, they are "two different models. *See* **Ex. 1** - Depo. I at 64:9 to 66:22; *see*, also*,* **Ex. 8** – Deposition Exhibit 3 (Coqui Design) and **Ex. 16** – Deposition Exhibit 10 (Coquico Coquí).

**Admitted. Copyright owners may commercially exploit works that are substantially similar to the deposit copy.**

32.     Rodríguez-Miranda agreed that the two models differed in head shape, stitching pattern, limb proportions, posture, and number of toes. *Id., see,* also, **Ex. 1.** - Depo. II, at 131:12 to 132:17; *see*, also **Ex. 8** – Deposition Exhibit 3 (Coqui Design) and **Ex. 16** – Deposition Exhibit

10 (Coquico Coqui).

**Denied. Exhibit 1 has no page 131 or 132, and Exhibit 16 shows a coqui's foot. Even if one turns to Defendants' Exhibit 3, which is the continuation of Mr. Rodriguez's deposition at 131 he testifies that:**

Can you frankly... and you're under oath...

state whether both of the plush toys have the same stitching

pattern?

A.    In some parts, they have the same. For example, when

you look at the eyeballs, they have a similar stitching pattern.

When you look at the back, I mean they're different sizes.

So, if you see they have similar stitching patterns on

the back, en el lomo, if you want to say that. In the belly, it

has a different stitching pattern, but it's pretty much the same

concept and color in terms of the flag and the placement of the
flag. That's the similarities.

**Defendant's Exhibit 3 at 131.**

**Mr. Rodriguez Miranda testified that the stitching pattern differed is some parts; but he also testified generally that the stitching was similar.  Even when Mr. Rodriguez Miranda acknowledges the models are different, he says that they are "different but similar," which sounds like a lay person's description of a substantially similar works. Defendants' Exhibit 3 at 132, line 12.**

33.    Rodriguez-Miranda further testified that notwithstanding those differences, he believes both designs share certain general features, including raised plastic eyes, a lighter belly with a darker-toned body, darker accents on the toes, and the inclusion of a Puerto Rican flag. *See* **Ex. 1** - Depo. I at 66:17–22, 67:1–13.

10

**Admitted.**

34.     Rodríguez-Miranda confirmed that, in his understanding, his claimed copyright is based on the combination of elements such as a cream-colored body, lighter belly, darker toes, plastic eyes, a stitched Puerto Rican flag, and a handtag. *See* **Ex. 3** - Dep. II at 140:22 to 141:1–5.

**Admitted.**

35.     Regarding the parrot plush toy, in *Coquico Inc. v. Angel Rodriguez Miranda, et al.*, Civ. 07-1432 the Court expressly declined to make a copyright infringement ruling involving the parrot because "there was no evidence of the copyright of the parrot copyright being registered." *See* **Ex. 17** – Deposition Exhibit 11 (*Opinion & Order, Civ. 07-1432* at p. 10).

**Admitted. That was because Coquico, Inc. inadvertently failed to include it. Wild Encantos included the cotorra in this case.**

36.     Rodríguez-Miranda agreed with that statement during his deposition, testifying: "That's what it says." *See* **Ex. 1** - Depo. I at 68:21–69:12.

**Admitted.**

Plaintiff Has Produced No Deposit Materials

37.     Plaintiff has not produced any deposit materials submitted to the U.S. Copyright Office for the alleged copyrighted designs. *See* **Ex. 11** - Supp. Ans. to First Set of Interrogs. & Requests, Requests No. 6 and 7.

**Admitted. None exist because the copyright destroys them after 20 years. *See* Plaintiff's Exhibit 2**

38.     During his deposition, Rodríguez-Miranda testified that he did not know whether such materials exist in Plaintiff's records and stated that any materials submitted in connection with the copyright application were handled by his former partner. *See* **Ex. 1** - Depo. I at 37:8–23.

11

**Admitted.**

E.    **Colors Dictated by the Real Animal**

39.    Rodríguez-Miranda testified that, aside from the addition of a Puerto Rican flag and a yellow beak, the colors and features depicted in Wild Encanto's *Parrot Design*— including a green body, blue wings, red crest, and white eye rings—are representative of a parrot in nature. *See* **Ex. 1** - Depo. I at 70:22 to 71:10 and 76:7–22.

**Admitted. Of course, parrots also have feathers, which a plush toy does not have have.**

40.    Rodríguez-Miranda disputed whether the Puerto Rican parrot's beak is yellow or white, but acknowledged that a publication on the Puerto Rican parrot described the parrot's beak as "yellow/horn in color." **Ex. 1 -** Depo. I at 73:19–23, 74:14–20; *see,* also **Ex. 18** – Deposition Exhibit 12 (World Parrot Trust Article)

**Admitted, but other sources differ, see below from the U.S. Fish & Wildlife website.**



41.    Rodríguez-Miranda conceded that the color choices for both the coquí and the parrot were driven by the need to resemble the actual animals. *See* **Ex. 3-** Depo. II at  142:4-17.

**Admitted but not material.**

**F.    Functionality**

42.    Rodríguez-Miranda admitted the flag stitched to the parrot and coquí design serves to identify the toy as a Puerto Rican souvenir.  *See* **Ex. 3-** Depo. II at 142:15-17.

**Admitted.**

43.      The corporate representative testified that plush toys may include plastic eyes or, alternatively, stitched eyes, confirming that plastic eyes are one of multiple common design options used in plush toys. *See* **Ex. 3** - Depo. II at 143:21 to 144:5.

**Admitted.**

44.      The corporate representative testified that each product includes a handtag consisting of a single sheet printed on both sides that provides information about the animal depicted, including a short narrative or background description of the species. *See* **Ex. 3**- Depo. II, at 142:18 to 143:20.

**Admitted.**

45.      The corporate representative further testified that all products include a handtag with this same general informational purpose, and did not attribute to the handtag any function beyond providing information about the animal. *Id.*

**Admitted.**

### G.    Defendants' Coquí Plush and Coquico Coquí

46.      Rodríguez-Miranda testified that the stitching patterns of the Coquico Coquí toy and Defendants' Coquí Plush are not the same, although he stated that certain limited aspects are "similar." *See* **Ex. 3** – Depo II at 134:17-24; *see*, also **Ex. 6** – Deposition Exhibit 16 (Defendants' Coquí Plush) and **Ex. 16** – Deposition Ex. 10 (Coquico Coquí).

**Admitted, except as set forth above, the characterization as "limited" is untrue.**

47.      When asked to identify similarities in stitching, Rodríguez-Miranda identified only the presence of stitching in the eyes and on the Puerto Rican flag, and did not identify any other similarities in stitching pattern. *Id.*

**Admitted.**

48.      Rodríguez-Miranda further testified that, although the two designs share a general

color combination (including a lighter belly, darker body, and darker toes), other elements differ, including toe design, flag placement, overall dimensions. *See* **Ex. 3** – Depo II at 134:25 to 134:14; 136:9-138:1; *see*, also **Ex. 6** – Deposition Exhibit 16 (Defendants Coqui Plush) and **Ex. 16** – Deposition Ex. 10 (Coquico Coqui).

**Admitted. The products do not have to be identical.**

Access and Copying

49.     Wild Encantos has sold its products at various retail locations over time, including, during the relevant period, Walgreens stores located in tourist areas and the convenience store at the Luis Muñoz Marín International Airport. *See* **Ex. 11**–Supp. Ans. To First set of Interrogatories and Requests, Interrogatory No. 15.

**Admitted.**

50.     When asked what evidence he had that Defendants had access to Plaintiff's products, Rodríguez-Miranda did not identify any specific evidence and instead stated that there was a "chance" Defendants may have seen the products at the airport. *See* **Ex. 1 -** Depo. I at 79:18 to 80:24.

**Admitted that Wild Encantos' products are publicly available.**

51.     Plaintiff did not produce documents substantiating such sales, including any records identifying or confirming any sales at the disclosed locations during the relevant time period. *See* **Ex. 11** – Supp. Ans. to First Set of Interrogs. & RFP's, Interrogatory No. 15 and Request No. 12.

**Admitted.**

I.      **Plaintiff Cannot Establish Willful Infringement**

52.     When asked what facts support his claim that Defendants knew of his alleged copyrights prior to this lawsuit, Rodríguez-Miranda testified that he does not believe Defendants had such knowledge, stating: "*I don't think they knew about the copyrights because, in one of the*

*phone calls, he's like 'If we would have known, we would have never done it.'" See* **Ex. 3** - Depo. II at 171:24–172:16.

53.    Rodríguez-Miranda admitted that, prior to filing the lawsuit, neither he nor his attorneys sent any cease-and-desist letter, any formal written complaint, or any e-mail notifying Defendants of the alleged copyright infringement. *See* **Ex. 3** - Depo. II at 172:18 to 173:6.

**Admitted.**

54.    The corporate representative testified that, upon receiving notice of the lawsuit, Defendants removed the accused merchandise from stores and transferred it to their warehouse. *See* **Ex. 3** - Depo. II at 172:3-6.

55.    The corporate representative further testified that, following the filing of the lawsuit, there were efforts to resolve the matter, including settlement offers. *Id*.

<u>**IV.**</u> **LANHAM ACT**

**Plaintiff is dismissing its claims under the Lanham Act**
      **A.** <u>**Protectable Trade Dress**</u>

56.    Wild Encantos has never obtained a federal trademark registration for the design, appearance, or trade dress of the *Coquí Design* or the *Parrot Design*. *See* **Ex. 2 -** Pl.'s Ans. to Co-Defs.' First Set of Interrogs. & RFPs, Interrogatory No. 11, at p. 4 ("*Applied for a Trade dress Registration", answered "No".*)

57.    Rodríguez-Miranda testified that trademark rights relate to "the name and the brand," and confirmed that Defendants do not use the "Wild Encantos" or "Coquico" names. *See* **Ex. 1** - Depo. I at 84:23 to 85:11, *see* also, **Ex. 3** - Depo. II at 160:4-22.

58.    In response to a request for documents describing or defining the elements of Plaintiff's alleged trade dress, Plaintiff stated: "There are no documents. The trade dress is reflected in the plush toys themselves." *See* **Ex. 11** - Supp. Ans. to First Set of Interrogs. RFPs,

Request No. 13.

59.    In response to Interrogatory No. 9, Plaintiff identified its alleged trade dress as "the toys' configuration, features, colors, presentation and their overall combination." *See* **Ex. 2** - Pl.'s Ans. to Co-Defs.' First Set of Interrogs. & RFPs, Interrogatory No. 9.

60.    Rodríguez-Miranda testified that the alleged "likeness" underlying Plaintiff's claims consists of features such as pose, eyes, stitching, and the presence of a Puerto Rican flag. *See* **Ex. 3** - Depo. II at 161:1–162:12.

61.    Plaintiff Lanham Act allegations in *Wild Encantos, LLC v. MRJ Distributors* (Civil No. 24-1584 (ADC)), mirror the allegations of Plaintiff's Lanham Act Count II claim, as reflected by a side-by-side comparison of the complaints, which shows that the paragraphs addressing the description of the plush toys, secondary meaning, likelihood of confusion, dilution, misrepresentation, and damages contain the same or substantially similar language. *See* **Ex. 19-** Complaint Civil No. 24-1584 (ADC), *see,* also **Dkt. 42** at ¶65-75 – *Amended Complaint.*

62.    The Lanham Act claim in civil case No. 24-1584 (ADC) was dismissed. The Court construed Plaintiff's statement that it "makes no trademark claim" as a renunciation of any Lanham Act claims, including trade dress, resulting in dismissal of those claims.  *See* **Ex. 20** - Opinion & Order Civil Case No. 24-1584.

### B.  Consumer Surveys/Market Recognition/Sales/Advertising Expenditures

63.    Plaintiff has not conducted, commissioned, or reviewed any consumer survey, surveys, market, research studies, or industry reports measuring public recognition, brand association, or consumer demand for its Parrot Design and Coqui Design. *See* **Ex. 2-** Pl.'s Ans. to Interrog. No. 20, and Request No. 16.

64.    Wild Encantos does not employ a marketing firm and has no separate marketing budget. **Ex.11** -Supp. Ans. To First Set if Interrogs., RFP's Request No. 14, p. 17 ("The marketing

strategy is that of a small business. WE, LLC does not have a marketing firm or a separate budget for marketing.").

65.     Wild Encantos's marketing consists of a Facebook page, a website, and in-store displays costing approximately $300 each, with no established advertising campaign. **Ex. 11**-Supp. Ans. to First Set of Interrogs. RPF's, Request No. 25, p. 19.

66.     Rodríguez-Miranda described Wild Encantos's marketing operation as: *"Like I said I'm a one man show."* **Ex. 1** - Depo. II at 111:17

67.     Despite acknowledging that Wild Encanto maintains detailed financial records — including cost and net profit spreadsheets in electronic format (**Ex 3** - Depo. II at 157:20–158:17)— Plaintiff has never produced any sales records, invoices, financial statements, or documented evidence of sales, revenue or profits in this litigation. **Ex. 14** - Supp. Ans. to First Set of Interrogs. RPF's, Request Nos. 22 and 24.

68.     In its Supplemental Answers to Interrogatories, Plaintiff identified certain alleged instances of recognition of its products, including that Frontier Airlines named the "Coquí Común" "souvenir of the year" and distributed it to passengers, that the National Park Service sold the plush toys, and that El Portal in El Yunque purchased coquí plush toys for a planned 2017 event; however, Plaintiff did not produce any documents supporting these statements. *See* **Ex. 14** - Supp. Ans. to First Set of Interrogs. RPF's, Interrogatory Nos. 21.

69.     Rodríguez-Miranda testified that Defendants' plush toys retail at approximately $4.99. *See* **Ex. 1** - Depo. I at 96:25-97:6.

70.     Wild Encantos's plush toys retail between $12 and $15. *See* **Ex. 1** - Depo. I at 96:10-21.

71.     Rodríguez-Miranda testified that he does not know who the typical Always 99 consumer is. **Ex. 1** - Depo. I at 97: 14.

72.    Rodríguez-Miranda testified that, to his knowledge, All Ways 99 sells its products only in its own retail stores, and he had no reason to believe otherwise. *See* **Ex. 1** - Depo. I at 103:6-11.

### C.  Consumer Confusion

73.    Rodríguez-Miranda testified that he did not personally observe any instances of customer confusion and instead relied on statements from individuals who contacted him and said they believed Defendants' products copied his.  *See* **Ex. 1** - Depo. I at 89:15 to 90:16; *see,* also, **Ex. 11** - Supp. Ans. to First Set of Interrogs. & RFP's, Interrogatory No. 10(f).

74.    Rodríguez-Miranda testified that the individuals who reported this alleged confusion were "people that know this is my business," including acquaintances and relatives. *See* **Ex. 1** - Depo I at 90:4–6

75.    Wild Encantos did not record, memorialize, or document any of the alleged confusion communications. *See* **Ex. 1**- Depo. I at 90:17-20; *see*, also, **Ex. 11**- Supp. Ans. to First Set of Interrogs. RPF's, Request No. 18 ("*No written documents*.").

76.    Rodríguez-Miranda testified that these alleged communications occurred sometime between 2022 and 2023 but did not identify specific dates or details. *See* **Ex. 1** – Depo I at 90:9-10.

### D.  Plaintiff Cannot Quantify Any Financial Loss

77.    Rodríguez-Miranda admitted under oath that this was not a financial loss case. *See* **Ex. 3** - Depo. II at 154:8–12; and **Dkt. 78**- *Motion Waiving Actual Damages*.

78.    The record shows that Wild Encantos has stipulated "that it has had zero losses". *See* **Dkt. 86** at p. 4.

79. Wild Encantos stated in its Supplemental Interrogatory Answers: *"Wild Encantos did not experience a loss of sales during the relevant period.".* **Ex. 14**- Supp. Ans. to First Set of Interrogs. & RFP's, Interrogatory No. 12.

80. Rodríguez-Miranda admitted that whenever he loses a client, he actively replaces that client with new business, and that his sales have remained stable as a result of his own efforts — a fact he described as "hustle." *See* **Ex. 3** - Depo. II at 152:3–10.

81. Plaintiff's damages claim relies entirely on statutory damages as it has waived any claim of actual damages. *See* **Dkt.78.**

In San Juan, Puerto Rico, on this 14th day of May 2026.

**CERTIFICATION:** An electronic copy of the foregoing motion was filed with the Clerk of the Court using the CM/ECF system which will send notification of this filing to opposing counsel of record.