**U UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO**

| | |
|---|---|
| WE, LLC d/b/a WILD ENCANTOS., <br><br> Plaintiff, <br> v. <br> CARIBBEAN RETAIL VENTURES, INC., SALOMON ABADI, Jane Doe, and their conjugal partnership; JOEL BENDER, Susan Roe, and their conjugal partnership, <br><br> Defendants. | Civil No. 3:24-cv-01185 (CVR) <br><br><br> Re: Copyright Infringement/Lanham Act |

**DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION
TO MOTION FOR SUMMARY JUDGMENT**

**TO THE HONORABLE COURT:**

Defendants Caribbean Retail Ventures, Inc., Salomon Abadi, and Joel Bender (collectively, "Defendants"), respectfully submit this **Reply** in further support of their *Motion for Summary Judgment* (**ECF No. 91**) ("MSJ"). Plaintiff Opposition brief (**ECF No. 101**) ("Opp." or "Opposition") and Response to Defendants' Statement of Uncontested Material Facts (**ECF No. 102**) ("SUMF Response"), read together, do not create a genuine dispute of material fact. To the contrary, Plaintiff has admitted every fact necessary to grant summary judgment.

**I. PLAINTIFF'S OWN ADMISSIONS ESTABLISH THAT SUMMARY
JUDGMENT MUST BE GRANTED**

The *SUMF Response* is not a document that generates genuine disputes — it is a document that resolves them, in Defendants' favor. The following admissions are dispositive and unrebutted:

**A. Plaintiff Admits It Never Filed Any Copyright Registration for the Designs at Issue**

**SUMF ¶ 12**: Plaintiff admitted that Rodriguez-Miranda "has not filed copyright registrations for any of the coquí plush toy models it sells." **SUMF Response at ¶ 12** ("While this statement is true…"). **SUMF ¶ 13**: Plaintiff admitted that "neither he personally nor Wild Encantos

1

ever filed a copyright application before the United States Copyright Office for either of the two designs alleged to be infringed in this action." **SUMF Response at ¶ 13** ("While this statement is true…").

These are fatal admissions. Plaintiff's deflection that these facts "are not material" because Rodríguez-Miranda purportedly purchased historical Coquico copyrights misses the mark. *First,* materiality is an issue for this Court[1], not Plaintiff. *Second*, a plaintiff cannot use summary judgment briefing to retroactively amend its complaint or switch its underlying legal theories. *Caribbean Ins. Serv., Inc. v. American Bankers Life Assurance Co.*, 754 F.2d 2, 7 (1st Cir. 1985).

The works explicitly alleged as infringed throughout the Amended Complaint are the "Wild Encantos Coquí Design" and "Parrot Design"—not the historical Coquico designs. *See* **Response to SUMF ¶ 9**, **Response to SUMF ¶ 30**, and **ECF No. 42** – *Am. Com.* at p.3.  Plaintiff admits it has never registered the Wild Encantos works. Under 17 U.S.C. § 411(a), registration is an absolute precondition to bringing an infringement suit.

Furthermore, Plaintiff's attempt to treat unregistered "Wild Encantos" models as identical proxies for the 2002 registrations fails as a matter of law. When an assignee commercially modifies a design into a separate commercial manifestation, those modifications represent an un-registered derivative work. *See Stewart v. Abend*, 495 U.S. 207, 223 (1st Cir. 1990) (aspects of a derivative work added by a derivative author are distinct from the underlying work). Because the *Amended Complaint* details the "Wild Encantos" designs as the sole bases for infringement, Plaintiff is attempting to litigate an unregistered derivative canvas. A court cannot assume that a legacy 2002

---

[1] Plaintiff's assertion that its admissions are 'not material' fails as a matter of law. Under long-standing Supreme Court precedent, the materiality determination rests entirely on the substantive law, and it is the court's prerogative—not the litigant's—to look to that substantive law to identify which facts are critical and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

registration retroactively covers *distinct commercial products* released *years later* by a *different entity* under a *different brand name*.

### B. Plaintiff Admits No Certificate of Registration Was Produced

**SUMF ¶ 14**: Plaintiff admitted that "[t]he only copyright-related document produced by Plaintiff issued by the U.S Copyright Office is a Certificate of Recordation." **SUMF Response at ¶ 14** ("While this statement is true…"). **SUMF ¶ 15:** Plaintiff admitted that "no such certificates appear in the documents produced."

Plaintiff excuses this by asserting that registration certificates are public documents. *Opp.* at ¶ 15. The public catalog search results submitted by Plaintiff (**ECF No. 101-1** - Opp. Ex. 1, 2) reflect only the recordation of a generic "Notice of Sale." It does not identify Rodriguez-Miranda or WE, LLC as the copyright claimant or establish a valid chain of title. Exhibit 2 (**ECF No. 101-2)** explicitly lists Coquico, Inc. as the copyright claimant. A public record identifying a third party as the owner is not evidence of Plaintiff's ownership. As the First Circuit has squarely held, "a certificate of recordation does not suffice to prove compliance with the registration requirement." *Latin Am. Music Co. v. Media Power Grp., Inc.*, 705 F.3d 34, 43 (1st Cir. 2013).

### C. Plaintiff's Exhibit 3 Confirms a Fatal Breach in the Chain of Title Under 17 U.S.C. § 204(a)

**SUMF ¶ 17:** Plaintiff admitted that "the only document" it has regarding the alleged transfer from Coquico is a Notice of Sale. **SUMF Response at ¶ 17** ("Admitted."). **SUMF ¶ 18:** Plaintiff admitted that "no Court Order, Bill of Sale, or Marshal-issued confirmation of the completed sale was attached to or included within any of the documents produced." **SUMF Response at ¶ 18** ("Admitted."). **SUMF ¶ 19**: Plaintiff admitted that the Process Receipt "does not identify, list, or describe which property was sold." **SUMF Response at ¶ 19** ("Admitted.").

3

Under 17 U.S.C. § 204(a), a transfer of copyright ownership is invalid unless an instrument of conveyance is in writing and signed by the owner or their authorized agent. While a judicial execution sale can transfer a copyright asset, the transaction must be evidenced by a valid, post-sale instrument of conveyance (such as a Marshal's Deed or Bill of Sale) describing the intellectual property with reasonable certainty. *See Konigsberg Int'l, Inc. v. Rice*, 16 F.3d 355, 357 (9th Cir. 1994).[2]

A review of Exhibit 3 (**ECF No. 101-3**) confirms Plaintiff's chain of title is a nullity. Page 1 is a U.S. Marshals Service Form USM-285 Process Receipt and Return.[3] The deputy notes only that generic "property [was] sold to Mr. Angel Rodriguez in the amount of $500.00." The document completely fails to identify what property was sold, and omits any mention of "copyrights," "Coquico," or the specific registration numbers.

Pages 2 through 9 of Exhibit 3 (**ECF No. 101-3**) consist entirely of the Marshal's Notice of Public Sale. A Notice of Sale is a pre-auction advertisement listing what the Marshal proposes to offer; it is structurally incapable of proving what was actually sold at auction.[4] Because the record contains no writing satisfying the mandates of 17 U.S.C. § 204(a), title never passed to Rodríguez-Miranda from the Marshal. His subsequent private assignment to Plaintiff WE, LLC is

---

[2] Explaining that § 204(a) requires a writing evidencing the parties' intent to transfer copyright ownership and providing certainty as to the scope and existence of the transfer.

[3] It is well-established federal law that a USM-285 form is merely an internal agency record used to document administrative actions and costs; it does not operate as an instrument of title or a deed of conveyance. *See Bernstein v. Roberts*, 405 F. Supp. 2d 34, 39 (D.D.C. 2005) (explaining that the USM-285 is simply a receipt and identification form issued by the Marshals Service and is not a substitute for a writ or other court-authorized instrument).

[4] Crucially, the Notice itself states (**ECF No. 101**-3, Page 9 of Exhibit 3) that the required minimum bid for the first auction was $348,821.23, and outlines that if no bids are received, subsequent auctions will occur at reduced minimums. Because the final USM-285 return reflects a flat, blind transaction of just $500, and because Plaintiff has admitted that no post-sale Bill of Sale or Court Order confirming the sale exists (**SUMF ¶ 18**), the record is completely blank as to what property was actually included or consolidated into that $500 transaction.

a legal nullity under the doctrine of *nemo dat quod non habet* (one cannot assign a right they do not possess).[5]

### D. Plaintiff Cannot Establish a Chain of Title to WE, LLC

**SUMF ¶ 26:** Plaintiff admitted that "the July 24, 2017 copyright assignment from himself personally to WE, LLC... was never submitted to the United States Copyright Office for recordation." **SUMF Response at ¶ 26**.

Because Plaintiff cannot establish that Rodríguez-Miranda ever legally acquired the copyrights from the Marshals sale (see Section C, *supra*), Rodríguez-Miranda possessed **zero** rights to assign to WE, LLC in 2017. Under *nemo dat quod non habet*, the unrecorded private assignment to WE, LLC is a legal nullity, leaving WE, LLC entirely without standing.

### E. Plaintiff Admits the Wild Encantos Coquí is a Different Model From The Registered Coquico Coquí.

**SUMF ¶ 31**: Plaintiff admitted that Rodriguez-Miranda "testified that the coquí plush toy at issue in this case, the Coqui Design, is not the same model as the Coquico Coquí plush toy" and that they are "two different models." **SUMF Response at ¶ 31** ("Admitted. Copyright owners may commercially exploit works that are substantially similar to the deposit copy."). **SUMF ¶ 32:** Plaintiff admitted that the two models "differed in head shape, stitching pattern, limb proportions, posture, and number of toes." **SUMF Response at ¶ 32** (denying only the specific deposition page citation[6], not the substance of the differences). **SUMF ¶ 48**: Plaintiff admitted that the two designs differ in "toe design, flag placement, overall dimensions." **SUMF Response at ¶ 48** ("Admitted. The products do not have to be identical.").

---

[5]    The cases Plaintiff cites for a 'no magic words' standard—*Radio Television Española S.A. v. New World Entertainment, Ltd.*, 183 F.3d 922 (9th Cir. 1999), and *Effects Associates, Inc. v. Cohen*, 908 F.2d 555 (9th Cir. 1990)—are completely inapposite. Those cases governed informal, voluntary, private agreements between willing copyright owners and transferees. Neither addresses a forced, involuntary judicial execution sale where no formal instrument of conveyance was ever executed by the transferring authority.

[6] The correct citation should be **Ex. 3.** - Depo. II, at 131:12 to 132:17, which was included in the SUMF.

Plaintiff's defense that copyright owners may exploit works substantially similar to the deposit copy is a non-answer. The question is whether Plaintiff can enforce a legacy Coquico registration based on a separate product that its own principal characterized as a "different model."

Copyright protection extends only to the registered work and expressions directly derived therefrom. *Johnson v. Gordon*, 409 F.3d 12, 20 (1st Cir. 2005). The architectural differences Rodríguez-Miranda admitted—head shape, stitching, posture, and toe count—are the exact unique elements that the First Circuit previously held defined the protectable scope of the legacy work. *Coquico, Inc. v. Rodríguez-Miranda*, 562 F.3d 62, 69 (1st Cir. 2009). Plaintiff cannot invoke a registration to protect a new design that explicitly departs from the structural elements defining the original registered work. The unregistered Wild Encantos toy cannot serve as a proxy comparator.

### F. The Total Absence of Deposit Materials Creates a Fatal Evidentiary Void

**SUMF ¶¶ 37–38:** Plaintiff admits it has not produced any deposit materials for the 2002 registrations and that they no longer exist. **SUMF Response at ¶¶ 37–38**.

The permanent destruction of the deposit copies creates an incurable evidentiary gap. A registration certificate alone cannot establish the protectable scope of a copyright when the underlying deposit materials are entirely absent from the record. *Alaska Stock, LLC v. Pearson Educ., Inc.*, 975 F. Supp. 2d 1027, 1040–41 (D. Alaska 2013) (denying summary judgment because without deposit copies, it is "impossible... to compare whatever works that may have been registered to the allegedly infringing products" (quoting *Lanard Toys Ltd. v. Novelty, Inc.*, 511 F. Supp. 2d 1020, 1033 (C.D. Cal. 2007)).

Because the deposits are gone, this Court cannot execute the "ordinary observer" test to isolate the original 2002 expression. Plaintiff attempts to substitute this void with the First Circuit's

6

historical description in *Coquico*, 562 F.3d at 69. However, that opinion cements summary judgment *for Defendants*. The First Circuit defined the protectable boundaries of the 2002 work by its unique posture, stitching pattern, color combination, flag placement, dimensions.  Because Plaintiff admitted under oath that its current "Wild Encantos" models fundamentally depart from those exact features (**SUMF ¶¶ 31, 32, 48**), the appellate framework confirms that the Wild Encantos plush is an unprotected, unregistered material modification.

### G. The Parrot Claim is Barred by Issue Preclusion and Defective Ownership Records

**SUMF ¶ 35:** Plaintiff admitted that in *Coquico Inc. v. Angel Rodriguez Miranda*, Civ. 07-1432, the Court declined to rule on parrot infringement due to a total absence of proof of a valid registration. **SUMF Response at ¶ 35**. **SUMF ¶¶ 14–15, 37:** Plaintiff produced no Certificate of Registration or deposit materials for the parrot.

### 1. Issue Preclusion Bars Relitigating the Registration

Plaintiff's attempt to resurrect the parrot claim is barred by issue preclusion (collateral estoppel). The existence of a valid parrot registration was squarely litigated and resolved against Plaintiff's direct predecessor-in-interest in Civ. 07-1432. Plaintiff cannot collaterally attack that final determination here. *See B&B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 148 (2015); *Texaco Puerto Rico, Inc. v. Medina*, 834 F.2d 242, 245 (1st Cir. 1987).

### 2. Plaintiff's Catalog Printout Confirms It Lacks Title

Plaintiff's Exhibit 2 (**ECF No. 101-2**)—a public catalog search printout for registration VA0001138520—affirmatively defeats its own claim by listing Coquico, Inc. as the sole claimant. It makes no mention of Rodríguez-Miranda or WE, LLC.

A catalog printout is not a Certificate of Registration and carries no statutory presumption of validity. 17 U.S.C. § 410(c); *Williams v. Hy-Vee, Inc.*, 661 F. Supp. 3d 871, 880 (S.D. Iowa

2023). A ministerial recordation entry does not satisfy the jurisdictional registration prerequisite. *Latin Am. Music Co.*, 705 F.3d at 43. Plaintiff's theory that the Copyright Office's automated acceptance of its filing proves title (**ECF No. 102, ¶17**) is legally meritless.[7]

### 3. Cross-Reference to Deposit Material Failure

As established in Section F, *supra*, the absolute absence of deposit materials makes it impossible to define the scope of the 2002 parrot design. Plaintiff is asking the Court to find infringement of an *unproduced work*, based on an *unknown registration*, *owned by a third party*. The parrot claim must be dismissed.

### H. Plaintiff's Copyright Catalog Printouts Are Unauthenticated and Legally Deficient

Plaintiff's evidentiary burden at summary judgment requires admissible evidence. Fed. R. Civ. P. 56(c)(1). The catalog printouts submitted as **Exhibits 1 and 2** fail on three independent grounds:

*First*, they are unauthenticated. A printout from the Copyright Office's public catalog is not self-authenticating under Fed. R. Evid. 902. Admissibility as a public record requires certification by the Copyright Office under Fed. R. Evid. 902(4).[8] Plaintiff submitted none.

*Second,* a catalog printout does not carry the statutory presumption of validity under 17 U.S.C. § 410(c), which attaches only to the registration certificate itself. *Williams v. Hy-Vee, Inc.*, 661 F. Supp. 3d 871, 880 (S.D. Iowa 2023) (plaintiff submitting only a public catalog search result "is not entitled to a rebuttable presumption of copyright ownership"); *La Resolana Architects, PA*

---

[7]  The recordation document (V9949D797) is classified as a "Recorded Document" — not a registration — and the system explicitly disclaims that it "does not verify the accuracy" of information submitted by remitters (*Opp*. Ex. 2, p. 5). Legally, the First Circuit has held that "recordation of an instrument relating to a work does not indicate that the work itself has been registered" and that "a certificate of recordation does not suffice to prove compliance with the registration requirement." *Latin Am. Music Co.*, 705 F.3d at 43.

[8] Compounding the problem, the Copyright Office's own disclaimer on the CPRS system states that the Office "does not verify the accuracy" of submitted information and that "there may be gaps and inaccuracies" in search results. (**Opp. Ex. 2**, p. 5.) A document that its own issuing agency disclaims as potentially inaccurate is not admissible proof of registration.

*v. Clay Realtors Angel Fire*, 416 F.3d 1195, 1207–08 (10th Cir. 2005) (other evidence of registration "does not entitle a copyright owner to the presumption of validity that § 410 confers on a certificate").

*Third*, Exhibits 1 and 2 affirmatively show Coquico, Inc. as the claimant, directly contradicting Plaintiff's claims of ownership. No presumption or liberal construction of the summary judgment standard converts a public record identifying a third party as the owner into proof that Plaintiff owns the copyright. *Latin Am. Music Co. v. Media Power Grp., Inc.*, 2011 U.S. Dist. LEXIS 34824 (D.P.R. Mar. 29, 2011). Plaintiff failed to produce certified copies of the registrations under 17 U.S.C. § 706. What remains is an unauthenticated catalog printout in someone else's name.

### I. Plaintiff Admits All Claimed Elements are Functional, Naturalistic, or Generic

**SUMF ¶ 39–45**: Plaintiff admitted that the parrot's colors "are representative of a parrot in nature" (**SUMF Response at ¶ 39**: "Admitted."); that the Puerto Rican flag "serves to identify the toy as a Puerto Rican souvenir" (**SUMF Response at ¶ 4**2: "Admitted."); that plastic eyes are "one of multiple common design options used in plush toys" (**SUMF Response at ¶ 43**: "Admitted."); and that the hangtag provides only "informational" content about the animal (**SUMF Response at ¶ 44–45**: "Admitted.").

Under First Circuit doctrine, unprotectable elements, functional traits, and standard industry features must be strictly filtered out under the concepts of merger and *scenes a faire* before any similarity analysis occurs. *Concrete Mach. Co. v. Classic Lawn Ornaments, Inc.*, 843 F.2d 600, 606-607 (1st Cir. 1988); *see also Satava v. Lowry*, 323 F.3d 805, 810 (9th Cir. 2003). Natural traits (parrot colors) or industry standards (standard plastic eyes) are completely unprotectable. Once filtered, Plaintiff is left with an empty shell and no protectable expression to compare.

**J. Plaintiff Admits It Has No Evidence of Access and No Sales Records**

**SUMF ¶¶ 50–51**: Plaintiff admitted that Rodríguez-Miranda "did not identify any specific evidence" of access, stating only that there was a speculative 'chance' Defendants saw the products at the airport, and produced zero documents substantiating product sales. **SUMF Response at ¶¶ 50–51.**

To establish access, a plaintiff must show a "reasonable possibility" of access, not a bare, conjectural possibility. *Johnson*, 409 F.3d at 17–18. While wide commercial dissemination can sometimes support an inference of access, *see Bright Tunes Music Corp. v. Harrissongs Music, Ltd.*, 420 F. Supp. 177 (S.D.N.Y. 1976), Plaintiff failed to build an evidentiary foundation for dissemination. Despite admitting it possesses electronic financial records (**SUMF ¶ 67/ SUMF Response at ¶67**), Plaintiff produced _**zero**_ sales records, invoices, or shipping data. Unsubstantiated interrogatory responses do not satisfy Fed. R. Civ. P. 56(c). Absent proof of access, Plaintiff must show "striking similarity" to prevail, which is a legal impossibility given that the original deposit materials are permanently destroyed. *Johnson*, 409 F.3d at 18.

**K. Plaintiff Admits No Willful Infringement**

**SUMF ¶¶ 52–53:** Plaintiff's witness testified that he "does not believe Defendants had" knowledge of the copyrights prior to the lawsuit, and admitted that no cease-and-desist letter or written complaint was sent prior to filing suit. **SUMF Response at ¶¶ 52–53.**

These admissions eliminate any claim of willful infringement, capping any theoretical statutory damages at the basic statutory minimums under 17 U.S.C. § 504(c). They confirm Plaintiff initiated federal litigation without any pre-suit investigation, warning, or attempt to resolve the dispute.

### III. PLAINTIFF'S VOLUNTARY DISMISSAL OF COUNT II AND SILENCE ON FEES WARRANT AN AWARD UNDER § 505

Plaintiff's Opposition and SUMF Response are completely silent regarding Defendants' request for attorney fees, constituting a legal waiver.

The Copyright Act's fee-shifting provision, 17 U.S.C. § 505, is entirely even-handed, and fees are routinely awarded to prevailing defendants to protect them from groundless lawsuits and deter copyright misuse. *See Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 527 (1994). Under the *Fogerty/Kirtsaeng* framework, an award of full fees is heavily compelled here across four distinct factors:

Objective Unreasonableness: *Kirtsaeng v. John Wiley & Sons, Inc.* commands courts to give substantial weight to the objective unreasonableness of a party's position. 579 U.S. 197, 209 (2016). Plaintiff maintained this copyright claim through summary judgment despite knowing it possessed no registrations in its name, no valid chain of title under § 204(a), and that they had no regulatory deposit copies.

Frivolousness and Bad-Faith Abandonment of Count II: Plaintiff's sudden request to voluntarily dismiss Count II (the Lanham Act claim) with prejudice in its Opposition is a transparent attempt to evade the consequences of a flagrantly frivolous filing. Plaintiff admitted it never obtained a federal trademark registration (**SUMF ¶ 56**), conducted zero consumer surveys (**SUMF ¶ 63**), and based its entire case on casual remarks from acquaintances (**SUMF ¶¶ 74–75**). This is a textbook meritless claim.

Malicious Motivation and Vexatious Litigiousness: The "motivation" factor looks to whether a suit was used for harassment. *Fogerty*, 510 U.S. at 534 n.19. Plaintiff previously asserted this exact trademark claim against separate retail competitors in *WE, LLC v. M.R.J. Distributors*, Civil No. 3:24-cv-01584 (ADC), where it explicitly admitted on the record that it "make[s] no

11

trademark claim" and allowed it to be dismissed (**SUMF ¶ 62**). Armed with the knowledge that this claim was a legal dead-end, Plaintiff maliciously maintained their claim even after Defendants raised the issue in their Moton for Reconsideration (**ECF No. 72**) and during depositions.

Compensation and Deterrence: Fee awards to prevailing defendants are vital to compensate them for the steep costs of defending their businesses. *Fogerty*, 510 U.S. at 527. Plaintiff blindsided Defendants with a federal lawsuit without any pre-suit warning (**SUMF ¶ 53**). It then forced Defendants to incur massive bills litigating a Rule 12(b)(6) motion (**ECF No. 31, 34, 37, 43, 51**), a motion for reconsideration (**ECF No. 72**), two motions to compel discovery (**ECF No. 58, 70, 74**) and this comprehensive Motion for Summary Judgment (**ECF No. 91**).

Furthermore, Plaintiff's explicit concession in its Opposition seeking leave to dismiss Count II (the Lanham Act claim) with prejudice functions as a formal capitulation. A voluntary dismissal with prejudice at this advanced stage of summary judgment confirms Defendants as the prevailing party under 15 U.S.C. § 1117(a). Because Plaintiff's briefing offers zero opposition or legal defense to Defendants' application for fees, its silence constitutes an absolute procedural waiver. A full award of fees is legally demanded to compensate Defendants for defending against these systematically abandoned and vexatious claims.

Because Plaintiff acts as a serial litigant who systematically ignores fatal evidentiary gaps and revives claims it already abandoned in parallel proceedings, a full award of reasonable attorney's fees and costs under 17 U.S.C. § 505 and 15 U.S.C. § 1117(a) is warranted to compensate Defendants and deter copyright misuse.

**WHEREFORE,** Defendants' respectfully request that the Court grant this motion for summary judgment at **ECF No. 91.**

Respectfully submitted,

12

In San Juan, Puerto Rico, this 27th day of May, 2026.

**I HEREBY CERTIFY** that on this date, I electronically filed the foregoing motion with the Clerk of the Court using the CM/ECF system, which will send notification of this filing to all counsel of record.

**ADSUAR**
*Counsel for Defendants*
P.O. Box 70294
San Juan, PR 00936-8294
Tel.: 787.756.9000/Fax: 787.756.9010

*/s/ Luis Pérez-Giusti*
LUIS PEREZ-GIUSTI
USDC-PR 208608
lpg@amgprlaw.com

*/s/ Alexandra Casellas Cabrera*
ALEXANDRA CASELLAS CABRERA
USDC-PR 301010
acasellas@amgprlaw.com